[Civil No. 1769.  Filed June 18, 1920.]

[190 Pac. 573.]

# MESA CITY, a Municipal Corporation, Appellant, v. J. W. LESUEUR and G. C. SPILSBURY, Copartners Doing Business Under the Firm Name and Style of LESUEUR–SPILSBURY COMPANY, Appellees.

1. Negligence—"Proximate Cause" of Injury Defined.—Where several proximate causes contribute to an accident and each is an efficient cause without the operation of which the accident would not have happened, it may be attributed to all or any of the causes, but it cannot be attributed to a cause unless, without its operation, the accident would not have happened.

2. Municipal Corporations—City Liable for Negligence Concurring With Act of Animal.—If a city was negligent in constructing a sewer system, in not tamping down the dirt and thus leaving a depression, resulting in the flooding of a basement, it was not relieved from liability for the flooding merely because the water came from a break in the banks of an irrigating ditch, caused by a gopher or some other burrowing animal.

3. Municipal Corporations—Negligence—Defect in Sewer not Remote Cause of Injury, Though Flood Precipitated by Burrowing Gophers.—Whether a cause which contributes to an accident is proximate is not determined with reference to the order in which several contributing elements succeed one another, but with reference to the efficiency of these elements, and negligence of a city in leaving a depression while constructing sewer was not rendered remote by reason of the fact that a subsequent act of a gopher, or other burrowing animal, caused a break in the bank of an irrigation ditch which resulted in the flooding of plaintiff's basement; the water following the depression negligently left by the city.

4. Negligence—Proximate Cause of Injury Defined as to Anticipation of Damages.—It is not necessary to defendant's liability that the consequence of his negligence should have been foreseen, it being sufficient if the damages are the natural, though not the necessary or inevitable result of the wrong; the test being whether ordinary prudence would have suggested to the person sought to be charged that his act or omission would probably result in damages to someone.

1. For discussion of subject of proximate cause, see note in 36 Am. St. Rep. 807.

5. NEGLIGENCE—PLAINTIFF MUST SHOW PROXIMATE CAUSE OF INJURY.
In an action for negligence, it is incumbent upon the plaintiff,
not only to prove negligence on the part of defendant, but also
to show that such negligence was a proximate cause of the
damages.

6. NEGLIGENCE—PROXIMATE CAUSE QUESTION OF FACT.—What is the
proximate cause of an injury is usually a question of fact.

7. APPEAL AND ERROR—ERRONEOUS INSTRUCTION NOT REVERSIBLE
ERROR UNLESS PREJUDICIAL.—Mere error in an instruction may
not be sufficient to warrant the interference of the Supreme Court,
for an error for which a reversal is to be directed must be one
which operates prejudicially to the appellant.

8. DAMAGES—MEASURE FOR INJURIES TO PERSONAL PROPERTY DIF-
FERENCE IN VALUE IMMEDIATELY BEFORE AND AFTER.—The meas-
ure of damages for injuries to personal property less than its
destruction is the difference in the value of the property imme-
diately before and immediately after the injuries, and not the cost
of restoring them, the resulting loss of trade, etc.

9. APPEAL AND ERROR—ERRONEOUS INSTRUCTION AS TO MEASURE OF
DAMAGES HARMLESS.—An erroneous instruction as to measure of
damages was harmless to defendant, where the uncontradicted evi-
dence showed that the damage exceeded the verdict.

APPEAL from a judgment of the Superior Court
of the County of Maricopa. F. H. Lyman, Judge.
Affirmed.

### STATEMENT OF FACTS.

This was an action by the appellees to recover dam-
ages from the appellant for the negligent flooding of
a cellar warehouse, whereby the goods and merchan-
dise of the appellees, stored in the cellar, were dam-
aged and destroyed. The principal undisputed facts
of the case are correctly stated in the brief of coun-
sel for appellees, as follows:

"The city of Mesa in 1916 undertook to construct a
city sewer system within the city. To this end the city
entered into a contract with a contracting firm to con-
struct the sewer system according to plans and speci-
fications therefor prepared by an engineer employed
by the city for that purpose.

---

6. Respective functions of court and jury with respect to question
of proximate cause, see note in **Ann. Cas.** 1913B, 351.

"The contract under which this sewer system was constructed provided that all the work of the contractors should be done 'under the direction and to the satisfaction of the engineer of the said town.' And it was done.

"The contract further provided that the contractor should make such connections with the sewer as the property owners along the line should desire, and extend such connections to the property owners' property line.

"One of the main lines of the sewer system installed by the city under the contract was laid down the center of McDonald Street in said city, and was laid at a depth of eight or ten feet. McDonald Street runs north and south at right angles with Main Street, the principal business street in Mesa. The First National Bank of Mesa owned and occupied its lot on the corner of Main and McDonald Streets, facing north on Main Street thirty-four feet, and east on McDonald Street seventy-seven feet. The plaintiff company was engaged in a general merchandise business in Mesa. Their store fronted on Main Street immediately west of the bank. The company also owned and occupied in connection with their store a warehouse situated immediately south of the bank building and fronting east on McDonald Street. Along the east property line of McDonald Street there was reserved and used as a sidewalk a strip ten or twelve feet in width, and for many years prior to the building of the city sewer an irrigating ditch had been constructed and used by the city for carrying irrigating water to the city lots, which ditch ran along the outer edge of the space reserved for sidewalk.

"At the time the sewer system was built and the connections above mentioned were made, the bank had constructed a cement sidewalk along the east line of its property on McDonald Street, which cement sidewalk covered the entire sidewalk reservation from its building to the irrigating ditch above mentioned—width of ten or twelve feet—and had also replaced the irrigating ditch above mentioned, with cement gutter the length of its sidewalk.

"Thereafter the irrigating water flowed in said gutter to the end of the sidewalk, and then dropped into the earth irrigating ditch above mentioned. Running south from the south end of the bank sidewalk and

through the center of the reserved sidewalk space above mentioned was a narrow sidewalk about three feet in width, leaving a space of three or four feet in width between the sidewalk and the buildings on one side and the irrigating ditch on the other unpaved.

"The sewer contractor in performance of his contract with the city was required to make a sewer connection with the bank building at a point about six or eight feet north of the south end of the wide cement sidewalk above mentioned. In order to avoid the inconvenience of having to tunnel and excavate a trench under the whole width of the wide sidewalk, in which to lay this sewer connection, the contractor dug the trench along or near to the south end of the wide sidewalk, to the basement wall of the plaintiff's warehouse, thus cutting through the earth irrigating ditch above mentioned, and then scooped the earth out from under the wide cement sidewalk and threw it up on each side of the narrow sidewalk. After laying the connecting pipe to the property line of the bank building, the contractor threw back the earth into the excavation thus made, and, instead of tamping it firmly and compactly, as his contract required, attempted to settle it by letting water into it. After thus settling the earth-filled trench, this earth fill settled, and left a depression where the excavation had been, and in which the sewer connection was laid. About one year thereafter the earth irrigating ditch above referred to broke at the point where it had been intersected and cut by the contractor in laying this sewer connection, and the water from this irrigating ditch followed the depression along the line of the insufficiently and improperly filled excavation made by the contractor in laying the bank sewer connection, and ran through the basement wall of the plaintiff's warehouse, filling it to a depth of six to eight feet with water, and damaged the goods and merchandise of the appellees."

The appellees in their complaint claimed $5,000 damages, and the jury returned a verdict in their favor in the sum of $2,500.

Mr. G. W. Silverthorn and Mr. F. H. Swenson, for Appellant.

Messrs. Kibbey, Bennett & Jenckes, for Appellees.

BAKER, J. (After Stating the Facts as Above.)— The only reasonable construction of the verdict in this case is that the negligence of the appellant in excavating the trench from the main line of the sewer laid down in the middle of McDonald Street to the basement wall of the appellees' warehouse and insufficiently tamping down the loose earth returned to the trench was the proximate cause of the damages to the appellees' goods and merchandise. This is the negligence or fault charged in the complaint. It is maintained by the appellees that the uncontradicted evidence shows that when the irrigating ditch broke at the point of its intersection with the trench the water escaping from the irrigating ditch flowed down the depression in the trench, caused by the insufficient tamping, to the basement wall of the warehouse, and thence made its way into the cellar, and did the damages complained of. The appellant does not seriously contend that it was not negligent in the work of excavating the trench and insufficiently tamping down the loose earth thrown back into the trench, but seeks to avoid liability for the damages suffered on the theory that its negligence was not the proximate cause of the damages complained of, for the reason that the water was let out of the irrigating ditch into the negligently filled trench by a gopher, or other burrowing animal, in the banks of the irrigating ditch, and that such work of the gopher, or other burrowing animal was an intervening cause without which the damages complained of would not have happened, and that therefore the appellant is not liable.

The correctness of the appellant's assumption that the break in the banks of the irrigating ditch was caused by a gopher or some other burrowing animal might well be questioned. There is much evidence in the record, *pro* and *con*, upon the point; but, since

there was no special finding of the jury upon the question, it is impossible to say what the jury believed was the cause of the break. But we do not understand that if it was true that a gopher or other burrowing animal caused the break, such fact would make any difference in the liability of the appellant.

It is a principle of law, well established by the authorities, that where several proximate causes contribute to an accident, and each is an efficient cause without the operation of which the accident would not have happened, it may be attributed to all or any of the causes, but it cannot be attributed to a cause unless without its operation the accident would not have happened. These rules have full support in the text-books, as well as in our cases. 29 Cyc. 497; 1 Shearman & Redfield on Negligence, par. 10, note 2, and cases cited; 16 Am. & Eng. Ency. of Law, 440–442; *Crandall* v. *Consolidated Tel. etc. Co.,* 14 Ariz. 322, 127 Pac. 994; *Phoenix Ry. Co.* v. *Beals,* 20 Ariz. 386, 181 Pac. 379.

Mr. Bishop in his work on Noncontract Law (paragraph 39) thus states the proposition:

"When the injury proceeds from two causes operating together, the party putting in motion one of them is liable the same as though it was the sole cause. This is one form of a universal principle in the law that he who contributes to a wrong, either civil or criminal, is answerable as doer. And it is immaterial to this proposition whether that to which he contributes is the volition of a responsible person, or of an irresponsible one, or whether it is a mere inanimate force, or a force in nature, or a disease."

This rule, imposing liability on a defendant, applies where the concurring cause may be the act of an animal for which the defendant is not responsible, if the injury would not have resulted but for his negligence. Thus Mr. Sutherland in his comprehensive work on Damages, volume 1, ninth edition, at paragraph 37, says:

"There may. be intervening operations of nature, acts produced by the volition of animals or of human beings, innocent acts of the injured party, or of third persons, and even tortious acts of the latter, and the chain of cause and effect not be necessarily broken or the result rendered remote. The test is not to be found in any arbitrary number of intervening events or agents, but in the character and in the natural and probable connection between the wrong done and the injury."

See, also, 29 Cyc. 499; *McDonald* v. *Snelling*, 14 Allen (Mass.), 290, 92 Am. Dec. 768.

Applying the foregoing principles, it is plain to be seen that the utmost the appellant can claim is that the action of the gopher concurred with the appellant's negligence in producing the damages. This is the sum total of the whole argument, and under the authorities cited that fact does not relieve the appellant from liability.

Under the evidence, the jury was fully justified in finding that, had the trench been properly constructed, and the loose earth properly tamped down, the damages would not have occurred, even though a gopher had perforated the banks of the irrigating ditch and let the water out. In such case, there would have been no depression or conduit through or over which the water might run to the basement wall of the appellees' warehouse.

It is insisted, however, that the causes were not concurrent because they did not happen at the same time, and it is reasoned that the action of the gopher, being nearest in point of time to the damages, was the proximate, and the appellant's negligence the remote, cause of the damages. But the law upon this point is clear. Whether a cause which contributes to an accident is proximate or not is not determined with reference to the order in which the several contributing elements succeed one another, but with reference to the efficiency of these elements. 29 Cyc. 491; 16 Am.

& Eng. Ency. of Law, 436, 444; Lawson on Rights, Remedies & Practice, p. 1743, § 1029. The jury, under the evidence, might well have concluded that the negligently constructed trench was the efficient cause of the damages, although it was first in point of time in the succession of events.

The appellant argues that it had no reason to anticipate that damages to the appellees' goods and merchandise might result as a consequence of its negligence. While there are some loose expressions in the books to the effect that one is not liable for negligence unless the results of his acts might reasonably have been foreseen by him, the true doctrine, as we understand it, is that it is not necessary to a defendant's liability that the consequence of his negligence should have been foreseen. It is sufficient if the damages are the natural, though not the necessary or inevitable, result of the wrong; such damages as are likely, under ordinary circumstances, to ensue from the act or omission in question. The test, after all, is, Would ordinary prudence have suggested to the person sought to be charged with negligence that his act, or omission, would probably result in damages to someone? The particular result need not be such as that it should have been foreseen. 29 Cyc. 493–495.

Of course, it was incumbent upon the appellees, not only to prove negligence on the part of the appellant, but also to show that such negligence was the proximate cause of the damages. What is the proximate cause, that is, the immediate and operating cause of an injury, is often a vexatious question. It is, however, usually a question of fact. Mr. Justice STRONG, in *Milwaukee etc. Ry. Co.* v. *Kellogg*, 94 U. S. 469, 24 L. Ed. 256 (see also, Rose's U. S. Notes), stated the rule to be followed in the solution of the question as follows:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It

is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it."

We think there was sufficient testimony to take the case to the jury on this proposition. The instructions given by the trial court on the subject were correct, and with the finding of the jury thereunder we are not disposed to interfere.

The appellant takes exception to the following instruction given by the trial court to the jury with reference to the method proper to be adopted by the jury in arriving at the amount of damages sustained by the appellees, viz.:

"If you believe from the evidence that the city in the construction of said sewer connection had been negligent in any particular in doing said work, and that by reason of such negligence water was discharged into plaintiff's basement storage room and thereby damaged or destroyed plaintiff's goods therein kept, then plaintiff is entitled to damages. His damage would be the depreciation in the value of the goods submerged, the cost of restoring them to a condition for sale, the actual difference between the value of the goods in their condition and the prices for which they were sold, if they were sold, and the resultant loss of trade resulting therefrom, and in the difference in cost of replenishing said stock of goods if you find there was such an increased cost in obtaining new goods to replace the old."

Without pausing to point out the particulars, we are fully convinced that the instruction on the measure of damages is erroneous. But mere error in an instruction may not be sufficient to warrant the interference of this court. The error for which a reversal is to be directed must be one which operates prejudicially to the appellant. 4 C. J. 908. The measure of damages for injuries to personal property less than its destruction is the difference in the value of the property immediately before and immediately after

the injuries.   2 Sedgwick on Damages, par. 435.   The uncontradicted evidence in this case shows that the value of the goods damaged was $5,312, before the cellar was flooded (giving the appellees by far the worst of the calculation), and that these goods were damaged to the extent of two-thirds of their value by the water.   The difference, therefore, between the value of the goods before the damage and immediately thereafter was $3,500, and the verdict was for $2,500. It is quite clear that the appellant was not prejudiced by the erroneous instruction.

We have discussed all the questions presented by the record which appear of importance.   We find no reversible error in the record, and, believing that the case was justly decided in the lower court on its merits, we affirm the judgment.

ROSS, J., concurs.

CUNNINGHAM, C. J. (Dissenting.)—I dissent from the order affirming the judgment.   I am convinced that the erroneous instruction on the measure of damages recoverable is calculated to deprive the defendant city of a fair trial.   For that reason, a new trial should be granted; the error being manifest. We are not able to say definitely that no injury resulted from a glaring error.