251 P.2d 311

**WEST v. CRUZ et al.**

No. 5555.

Supreme Court of Arizona.

Dec. 8, 1952.

Rehearing Denied Feb. 17, 1953.

14

---

Struckmeyer & Struckmeyer, of Phoenix, for appellant.

Bumsted & Linsenmeyer, of Phoenix, for appellees.

LA PRADE, Justice.

The judgment on verdicts here appealed from awarded money damages to Ralph M. Cruz and Adela M. Cruz, his wife, on account of injuries sustained by them growing out of an automobile accident involving the car in which they were guest passengers and the car of the appellant defendant.

The parties will hereinafter be referred to as they were in the trial court, plaintiffs and defendant.

This appeal presents for review the denial of defendant's motion for a directed verdict at the close of plaintiffs' case; the denial of his motion for a directed verdict at the close of all the evidence; the denial of his motion for judgment notwithstanding the verdict or that a new trial be granted; and, the judgment itself.

The evidence relied on by plaintiffs presents a most unusual fact situation which we will endeavor to briefly reconstruct. Plaintiffs, at the time of the accident, were guest passengers in the car of Mr. Delores R. Amparano, who was driving the car of his father, Mr. Ygnacio M. Amparano. The accident occurred where West McDowell, North 19th Avenue and Grand Avenue intersect each other, in Phoenix, Arizona, and which intersection is commonly called "Six Points". At this point West McDowell runs east and west, 19th Avenue runs north and south and Grand Avenue extends northwesterly and southeasterly. The southeasterly portion of Grand Avenue lies south of McDowell and east of 19th Avenue, whereas the northwesterly portion of Grand Avenue lies north of McDowell and west of 19th Avenue. For the purpose of clarity we will assume that Grand Avenue runs north and south. When we refer to the direction "south" in truth of fact we mean southeasterly, and when we refer to the direction "north" we mean northwesterly.

In the car driven by Amparano there were three passengers, the plaintiffs Cruz and a Mr. X, who had shortly theretofore received knife wounds at or near Glendale, Arizona, and who was being transported to a hospital. At a point approximately a mile and one-half north of Six Points, on Grand Avenue, the Amparano car had been intercepted by a highway patrolman whose attention was directed to the car on account of the excessive speed at which it was being driven. On learning of the mission of the occupants of the Amparano car the patrolman offered to escort Amparano, and insofar as possible provide an open and unobstructed right-of-way. Amparano was instructed by the patrolman to "follow me" and "stay close to me". The patrolman then proceeded to drive at a speed of between 65 and 75 miles per hour in a southerly direction on Grand Avenue. Amparano endeavored to and did "follow" at a distance of approximately 150 to 200 ft. During this trip the patrolman was sounding his siren and showing the red light. Grand Avenue, north and south of the Six Points intersection, contained four wide and well-marked lanes of traffic, and at the six-point intersection was controlled by a series of stop and go lights. Immediately preceding the accident all north and south vehicular traffic on Grand Avenue was stopped on the red light signal. On reaching the intersection the patrolman discovered that both

16

lanes on Grand Avenue, southbound, were occupied with cars. There were at least two automobiles in the westerly "slow" lane and four automobiles, one behind the other, in the easterly "passing" lane, waiting for the signal to turn green. On the south side of West McDowell both of the northbound lanes of Grand Avenue were occupied by automobiles, one of which was the automobile driven by the defendant West, which was stopped in the east lane, next to the curb. The patrolman (southbound), on approaching the southbound cars, suddenly discovered that the passing lane which he desired to use was occupied by four cars, end to end, the most northerly car of which had no illuminated tail light, (9:30 P.M.). At this point he made a quick swerve to his left (east) and crossed over the center line of Grand Avenue into the passing lane reserved for cars being driven north. The officer passed this "fourth" car and without mishap successfully pulled into the intersection, at which time he swerved to his right and in so doing, easily and with space to spare, passed the defendant approximately in the middle of the intersection. When the stop and go lights turned green West pulled out into the intersection, intending to proceed northerly on Grand Avenue. West testified that he did not hear the siren or see the red light of the approaching patrolman until the patrolman zoomed into the intersection, where they passed each other. West continued on in his slow lane (right-hand lane for him) and had almost crossed over the north boundary line of West McDowell when the car driven by Amparano collided head-on with his car. Amparano testified that in his endeavor to keep up with the patrolman he did not see the last (fourth) car in the passing lane, going south on Grand Avenue, until he was practically on it. He swerved sharply to the left and "clipped" the left rear fender of the stationary car (fourth car), knocking off its fender and tail light. In his attempt to avoid colliding with this car he crossed over the center line of Grand Avenue, *across* the passing lane for northbound traffic, and into the eastmost lane of Grand Avenue, being the lane in which defendant West was travelling.

At the time of impact defendant's car was barely moving or "perhaps stopped". From this collision the plaintiffs, Cruz and Cruz, received personal injuries which were the basis of their claims. In the court below Ygnacio Amparano, the owner of the car, was also a plaintiff, claiming damages on account of the injuries to his automobile. On this demand the verdict of the jury was against him and judgment was entered thereon, from which no appeal has been taken. Defendant West counter-complained against Delores Amparano, seeking recovery for damage to his car. On this demand the verdict was for the counter-defendant (Amparano) and judgment was entered thereon, and on this portion of the judgment there is no appeal. The driver of the so-called fourth car above referred to

(Mr. J. E. Maxwell) was also made a party defendant. On his motion a directed verdict was entered for him, on the ground that the evidence showed no actionable negligence on his part, from which there has been no appeal.

The negligence charged against the defendant West was "that in total disregard of the flashing red light and siren of the leading police car, he continued down the center lane of the highway and failed and refused to pull over to the right side of the road and stop as required by law". The uncontradicted evidence was that defendant was, at the moment of the collision, in the easterly lane. As we view the fact situation and the law applicable thereto, it makes no difference as to which of the two lanes he was in proceeding to the point of collision.

By proper assignments of error defendant has (1) challenged the sufficiency of the evidence to show any negligence on his part which in any manner contributed to the accident and plaintiffs' resulting injuries, and (2) the correctness of the rulings on the motions for a directed verdict. Other assignments of error are urged but in view of our disposition of the case we do not deem it necessary to consider them.

It was plaintiffs' theory that the negligence of the defendant was his failure to remain stationary at the time he was stopped for the red light. Their contention is that defendant should not have entered the intersection when the light turned green in view of the fact that the highway patrolman was approaching with his red light displayed and siren sounding; this without regard to the fact that the defendant testified that he did not see and hear, but upon the contention that he should have seen and heard. Plaintiffs rely on Section 66–113, A.C.A. 1939, which reads as follows:

"Upon the approach of any police or fire department vehicle giving audible signal by bell, siren or exhaust whistle, the driver of every other vehicle shall immediately drive parallel to the right-hand edge or curb of the highway, as near as possible, clear of any intersection of highways, and shall stop and there remain, unless otherwise directed by a police officer, until the police or fire department vehicle shall have passed. * * *"

The trial court instructed the jury with reference to this section, and told them that this section constituted a rule of the road and that any violation thereof constituted negligence, and that they would be justified in finding a verdict against the defendant if they found a violation of this rule of the road, and further found that such violation was the proximate cause of the injuries sustained by plaintiffs. In defining proximate cause the court used that definition that has so often been approved by this court, i. e.:

"By proximate cause is meant a cause which, in its natural and continuous sequence unbroken by any new cause,

18

produces an injury, and without which the injury would not have occurred."

The court correctly instructed the jury that the Amparano car could not be classified as an emergency vehicle within the meaning of statute relating to emergency vehicles, Section 66–105, A.C.A. 1939. This section relieves public or private ambulances, when travelling in emergencies, from the speed limitations of the statutes.

By sending the case to the jury the trial court in fact determined, as a matter of law, that defendant owed plaintiffs a duty of due care under the circumstances. The jury, by rendering a verdict in favor of the plaintiffs, determined, as a fact, that the defendant violated that duty, and that such violation was the cause in fact or a contributing cause of the harm sustained by them. In other words the jury, by its verdict, found that the proximate cause of plaintiffs' injuries had its origin in defendant's failure to obey the statute, and that this affirmative act of negligence, in its natural and continuous and uninterrupted sequence, produced the injuries.

It is our considered opinion that the failure of the defendant to have his car standing still at the south boundary line of W. McDowell Road, when the patrolman passed, did not in any wise contribute to the collision which subsequently occurred, nor did it interfere with the safe passage of the patrolman. Not being a part thereof, or contributing thereto, any negligence in failure to stop is wholly immaterial. Such was the holding in the case of Falasco v. Hulen, 1935, 6 Cal.App. 2d 224, 44 P.2d 469, in which case the plaintiff was in the position of defendant here. The plaintiff in this last cited case had heard the siren of the oncoming officer and had pulled off to the side of the road and stopped. Immediately after the officer had passed, and while he was either stationary or attempting to get back on the road to proceed, he was run into by the defendant, who in our case represents the driver of the Amparano car.

Our statement that the defendant's negligence was wholly immaterial is made upon the premise "A man's responsibility for his negligence * * * must end somewhere". Hoag & Alger v. Lake Shore & Michigan Southern R. Co., 1877, 85 Pa. 293, 298. With reference to this limitation Lester W. Feezer, Professor of Law at the University of Arizona, in an article entitled "A Circle Tour Through Negligence", appearing in New York University Law Review, Vol. 27, No. 4 (October 1952), says:

"The same limitation here applied to proximate cause applies with equal force to the matters of duty and harm. Duty must end somewhere. Also the type of harm for which a man shall be responsible must end somewhere and, in the last analysis, it is this writer's contention that whether you talk in terms of harm, or duty or proximate cause, you are talking about the same thing. Duty is as good as any for the whole matter."

To paraphrase Judge Cardozo in the Palsgraf case, infra, the defendant's statutory negligence was not a wrong to plaintiffs who were far north on Grand Avenue at the time defendant entered the intersection. Relatively to them it was not negligence at all. Nothing in the situation gave notice that defendant's entry on the green light had in it the potency of peril to persons thus removed.

"Negligence is not actionable unless it involves the invasion of legally protected interest or the violation of a right." Palsgraf v. Long Island R. Co., 1928, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253.

What duty did defendant owe plaintiffs under all the circumstances? Surely it was not to anticipate that his violation of the statute set up a hazard for safe conduct of persons who might choose to violate all of the rules of the road in "tailing" a patrolman, at high speed, during the nighttime, on the wrong side of the road and into the common intersection of three highways.

It is our understanding that the purpose or impelling reason for the enactment of Section 66–113, supra, directing drivers of vehicles to immediately drive parallel to the curb, on the announced approach of police or fire department vehicles, and to stop and there remain until the police or fire department vehicle shall have passed, was to insure a free and unobstructed passageway for such vehicles on emergency missions. These vehicles, not being subject to the speed limitations generally applicable, often travel at accelerated rates of speed in the pursuit of their duties. Their safety and that of the public will be protected if vehicles pull over and clear the highway. Vehicles by stopping lessen the opportunity for mishap always attendant when approaching vehicles are about to pass. That this rule of the road is salutary is most evident. The rules describe the circumstances under which it shall become applicable, and also when the duty under the rule shall *expire*. When the police or fire department vehicle shall have passed, the stopped vehicle shall be free to resume its journey.

It seems to us, on the facts here presented, that when the patrolman passed the defendant was free to proceed. At this point no additional duty under the statute remained to be fulfilled. At this moment did he owe any special duty to the Amparano car or its passengers? We think not. While it is true that the negligence of the driver of the Amparano car is not imputable to these guest plaintiffs, we still believe that the defendant owed them no duty since their presence at the time and place was wholly unforseeable. The unforseeable presence of the Amparano car and its contents suggests and confirms that the defendant owed no duty to these plaintiffs. Palsgraf case, supra. "In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a

duty to the individual complaining, the observance of which duty would have averted or avoided the injury." West Virginia Central & P. R. Co. v. State, 96 Md. 652, 54 A. 669, 671, 61 L.R.A. 574.

The judgment is reversed with instructions to dismiss the complaint.

UDALL, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.