272 P.2d 352

**CROUSE et al. v. WILBUR–ELLIS CO.**

No. 5769.

Supreme Court of Arizona.

June 21, 1954.

Rehearing Denied Sept. 21, 1954.

Shimmel, Hill & Hill, and Robert & Price, Phoenix, for appellants.

Snell & Wilmer by Walter Linton and Edward Jacobson, Phoenix, for appellee.

UDALL, Justice.

This is an appeal by third party plaintiffs R. E. Crouse, E. E. Moore et ux., and

American Casualty Company, a corporation, from a judgment entered non obstante veredicto, in favor of third party defendant-appellee, Wilbur-Ellis Company, a corporation. For simplification the parties will hereafter be designated either by name or as plaintiffs and defendant.

Upon appeal from judgment n. o. v. the facts must be taken in the light most favorable to the party who received the verdict. Glowacki v. A. J. Bayless Markets, 76 Ariz. 295, 263 P.2d 799. The facts giving rise to this litigation, stated in the light most favorable to plaintiffs, are that during the summer of 1949 plaintiffs were growing cotton on eighty acres of land a half mile north of West Camelback Road on Lateral 15 in Maricopa County. Their neighbor, D. N. Schrock had an excellent cantaloupe crop on an abutting eighty acres. Their respective holdings lie as indicated:

N.

W.                                    E.

S.

Defendant Wilbur-Ellis Company was engaged in the business of selling and sup-plying insecticides and fertilizers to farmers. In conjunction with the operation of its business, it maintained and employed certain experienced technical men who would periodically inspect customers' fields and ascertain the extent and nature of insect infestations, and would then recommend and sell to the customers a proper kind and amount of its products to rid or control the infestation. Plaintiffs were customers of defendant, and defendant at the time here involved was looking after and recommending the means of controlling the insect hazard in plaintiffs' field of cotton.

On the morning of July 6, 1949, defendant's expert, Philip B. Henry, Jr., made an inspection of plaintiffs' cotton field and determined the existence of a dangerous infestation of lygus and stinkbugs. He immediately reported this to plaintiffs and stated they needed to dust. No discussion was had as to the kind of insecticide to be used, for plaintiffs wholly relied upon Henry's judgment. The latter placed the order for insecticide with defendant, and about 4:00 or 4:30 p. m. that evening Henry personally delivered to the Airhaven Airport 1500 pounds of insecticide containing 5% DDT, 77% sulphur and 18% inert ingredients, by weight.

Chester Kurinsky, president of the Quick Flying Service, a corporation engaged in crop dusting for farmers, was present when plaintiffs were advised of the infestation and need for dusting. Inasmuch as his

company had previously been performing this service for plaintiffs Kurinsky was told by plaintiffs to go ahead and dust the cotton crop which his fliers did that evening just before dusk.

Shortly after the dusting Schrock's cantaloupe crop suddenly underwent a great change. The vines turned light green in color and a day or two later the vines and leaves "seemed like a blowtorch had hit the whole field". The melons were exposed to the hot rays of the sun and practically the whole crop was lost. The testimony is overwhelmingly to the effect that the destruction of the cantaloupe crop was caused by the dusting of plaintiffs' cotton on the adjoining land. Apparently a breeze blowing from the north at the time of the dusting had carried the insecticide onto the melon crop, and the experts all agreed that this insecticide because of its high sulphur content is extremely deadly to the cantaloupe plant. Defendant at the time of advising the use of the insecticide, through its agents, knew of the deadly effect of sulphur upon cantaloupe plants, and knew that the field of cantaloupe adjoined the field of cotton. It also knew that it was not good practice to dust with sulphur in the immediate vicinity of a growing crop of cantaloupe. The evidence stands uncontradicted that plaintiffs were not aware that an insecticide containing sulphur would be destructive of a cantaloupe crop, nor were they or the Quick Flying Service apprised by the agents of defendant Wilbur-Ellis

Company of these facts or of the hazard to which they were being subjected. The evidence also shows there is an insecticide, benzene hexachloride, which is harmless to cantaloupe plants and would have effectively controlled the infestation in the cotton crop. In fact, the dusting with sulphur and DDT failed to kill the infestation, and benzene hexachloride was used in dusting the cotton some three days and thirteen days after the dusting with sulphur.

When Schrock ascertained the cause of destruction of his melon crop he demanded that Crouse and Moore owners of the cotton crop, and the Quick Flying Service reimburse him, and he brought an action sounding in tort against them for damages in the sum of $45,000. The parties he sued then applied to the court and obtained an order bringing in the Wilbur-Ellis Company as third party defendant, claiming that the latter was the party directly responsible for the damage and that they should recover over against it. Crouse and Moore also cross-claimed against their co-party, the Quick Flying Service, asking a judgment over for any judgment they might be required to pay. Thereafter the American Casualty Company, Crouse and Moore's insurance carrier, was brought in as a party defendant.

After a complete and full investigation of the facts, Crouse and Moore and their insurance carrier became convinced that under our holding in the case of S. A. Gerrard Co., Inc., v. Fricker, 42 Ariz. 503,

27 P.2d 678, they could not escape responsibility for the destruction of their neighbor's valuable cantaloupe crop, so they went to Schrock and made an effort to discharge the obligation. Their position was made known to the Wilbur-Ellis Company and the Quick Flying Service, who were tendered the defense of the case and were requested to participate in any settlement or compromise that could be made of Schrock's claim for damages. This tender and request met with a firm denial from both parties and both refused to participate in any negotiations or to make any contributions to the payment of the damage.

Thereupon, Crouse, Moore and the American Casualty Company reached a settlement with Schrock and paid the latter $10,000 in return for his covenant not to sue. Schrock then dismissed the case against them but proceeded with the trial of his case against the Quick Flying Service, which resulted in an instructed verdict for the latter on the theory the dismissal was a release of joint tortfeasors. On this appeal we are not concerned with this phase of the case.

The instant proceeding which was separately tried to the court, sitting with a jury, involves the efforts of Crouse, Moore and the surety company, as cross-plaintiffs and third party plaintiffs, to recover from Quick Flying Service (cross-defendant) and the Wilbur-Ellis Company (third party defendant) the $10,000 plaintiffs had paid to Schrock, together with their attorneys' fees, interest, expenses, and costs.

Three days were consumed in trial. Both defendants moved for instructed verdicts at the close of plaintiffs' case and at the close of all the evidence, which motions were denied. The case was not submitted to the jury for a general verdict, but was submitted on interrogatories covering the facts in dispute.

By their answers the jury found: (1) that Wilbur-Ellis Company on or prior to July 6, 1949, advised Crouse and Moore their cotton crop was so infested with insects as to require dusting; (2) that said company recommended for use on this cotton an insecticide containing ingredients dangerous to growing cantaloupes; (3) that at the time they recommended this insecticide Wilbur-Ellis Company knew it was dangerous to cantaloupes; (4) that the cantaloupe crop failure was due entirely to sulphur damage; (5) that Crouse and Moore relied upon the recommendation of said company; (6) that Crouse and Moore did not know of the dangers to cantaloupes of the insecticide recommended; (7) that the insecticide recommended and supplied by Wilbur-Ellis Company was the proximate cause of the damage to the Schrock cantaloupe crop; (8) that such damage did not exceed $10,000; (9) that the plaintiffs fairly investigated their liability to Schrock and informed the defendants of their conclusions and afforded them an opportunity to contest such liability or participate in the

defense and payment of Schrock's claim for damages; (10) that the plaintiffs necessarily incurred expenses of attorneys' fees and costs in the defense of Schrock's claim; (11) that Crouse and Moore employed the Quick Flying Service to apply the insecticide; (12) that the Quick Flying Service was negligent in applying the insecticide to the field of cotton; and (13) that the negligence of the Quick Flying Service was not the proximate cause of the damage to the cantaloupe crop.

Despite the fact that the answers to the interrogatories were all favorable to plaintiffs, the court refused to accept the findings. and in effect set them aside insofar as the Wilbur-Ellis Company was concerned, for it denied plaintiffs' motion for judgment on the verdict as against this defendant. The learned trial court after more mature deliberation evidently thought it had erred in denying this defendant's motion for an instructed verdict, hence acting under the provisions of Rule 50(b), Rules of Civil Procedure, Section 21–1015, A.C.A.1939, it granted defendant's motion for judgment notwithstanding the verdict; and at the same time the court awarded plaintiffs judgment against the Quick Flying Service. The latter has not appealed.

The trial court has enlightened us as to the basis for its action. In a memorandum opinion it is stated the jury failed to follow the following instruction (No. 16) which had been given them, viz.:

"You are instructed that the insecticide should have been applied when the air was quiet and if you find that the insecticide was applied when the wind was blowing by the Quick Flying Service, then you shall find for the Third Party Defendant, Wilbur-Ellis Company.",

and that this dereliction on their part coupled with their finding No. 12, supra, "that the Quick Flying Service was negligent in applying the insecticide" made it obligatory upon the court to enter judgment for defendant. Reliance is also had upon the fact that the uncontradicted evidence showed that a breeze was blowing in a southwesterly direction (toward the melon crop) at the time the insecticide was applied. As we view it the instructions were erroneous and should not have been given, for the reasons hereinafter stated.

Plaintiffs have appealed from the favorable judgment granted the defendant and have assigned as error the entering of the preliminary orders incident thereto. It is urged that the jury, not the court, was the fact-finding body, and its conclusions as to negligence and causal relation were binding on the court and could not be ignored. Plaintiffs contend that the trial court erred in giving instruction No. 16, supra, for the reason that the evidence was insufficient to establish a basis upon which the court, as a matter of law, could determine that the negligence of the flying

service or the wind was an intervening and superseding proximate cause.

■ Where negligence is charged to another's conduct, it is often helpful to break the problem down into its component parts of duty, violation thereof, and resulting injury, or, as we recently declared in City of Phoenix v. Lopez, 77 Ariz. 146, 268 P.2d 323, 325:

"It is basic under our law that to constitute actionable negligence the defendant must owe a duty to the plaintiff, the breach of which results proximately in plaintiff's injury. (Citing Arizona cases.) In West v. Cruz, 75 Ariz. 13, 251 P.2d 311, 315, it was held that the actor owes no duty outside the scope of anticipated risk of harm. In this case, West, we quoted approvingly from the case of Palsgraf v. Long Island R. Co., 1928, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253, as follows:

"'* * * "Negligence is not actionable unless it involves the invasion of legally protected interest or the violation of a right." * * *'

"For a different statement of the rule we also quoted from the case of West Virginia Cent. & P. Ry. Co. v. State, 96 Md. 652, 54 A. 669, 671, 61 L.R.A. 574, this wording of the rule:

"'* * * In every instance, before negligence can be predicated on a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury. * * *'"

■ In Pollock on Torts, 15th Ed., at p. 17, we find:

"* * *. The whole modern law of negligence, with its many developments, enforces the duty of fellow-citizens to observe in varying circumstances an appropriate measure of prudence to avoid causing harm to one another. The situations in which we are under no such duty appear at this day not as normal, but as exceptional. A man cannot keep shop or walk into the street without being entitled to expect and bound to practise observance in this kind * * *."

Duty in a given situation is commensurate with the dangers involved. It is settled law in Arizona that the risk of harm to neighboring property from dusting or spraying crops by airplane is very great, so great in fact that liability for such harm cannot be avoided by hiring an independent contractor to perform such work. S. A. Gerrard Co. Inc. v. Fricker, supra, 42 Ariz. 503, 27 P.2d 678; and see Lundberg v. Bolon, 67 Ariz. 259, 194 P.2d 454. In the case at bar defendant undertook to advise plaintiffs as to the necessity for dusting their cotton, and undertook to advise them of the proper chemicals to be used in such dusting. There was a danger or risk of harm known to defendant and unknown to plaintiffs, to-wit that the adjoining field of cantaloupe might be devastated by the

sulphur defendant recommended be dusted on the cotton. If the harm materialized, plaintiffs were persons who would probably be injured thereby because of their liability to respond in damages to the owner of the cantaloupes; that is, plaintiffs were "foreseeable plaintiffs", ones within the orbit of the risk. City of Phoenix v. Lopez, supra; and see West v. Cruz, 75 Ariz. 13, 251 P.2d 311. We hold that defendant here owed to plaintiffs the duty to use such care and caution as an ordinarily prudent person in like circumstances would use to avoid harming plaintiffs.

Our next concern is the problem of the violation of the duty. Defendant urges that as a matter of law the duty was fulfilled, for the label on the bags containing the DDT-sulphur compound declared in part:

"* * * Do not apply DDT to food or feed crops under conditions yielding residues in excess of tolerance. *Do not apply to leafy vegetables.* Consult local authorities. Do not use this product on food or forage to be fed dairy animals, or animals being finished for slaughter.

\* \* \* \* \* \*

"Suggestions for use: *Apply* when insects are present on plants and *when air is quiet,* preferably in early morning. Even coverage of infested parts of plants is essential for control." (Italics supplied)

Defendant contends the italicized portions adequately warn of the dangers inherent in the use of this product in close proximity to cantaloupe, and as a matter of law fulfills its duty. In support of this position it relies upon E. I. Du Pont De Nemours & Co. v. Baridon, 8 Cir., 73 F.2d 26. Therein the plaintiff had used defendant's product "Semesan" as a disinfectant for gladiolus bulblets, and the use thereof had resulted in damage to the bulblets because plaintiff had not allowed them to dry after dipping them in the product. The court examined the law concerning the duty of a supplier of chattels, from Huset v. J. I. Case Threshing Machine Co., 8 Cir., 120 F. 865, 61 L.R.A. 303, and MacPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, Ann.Cas. 1916C, 440, up to the time of decision and concluded the defendant's duty was to exercise such care as an ordinarily prudent manufacturing chemist would usally have used in giving directions for the use of such a product, and not knowingly to prescribe a use which would destroy plants. The court held the defendant was not liable for the loss because the plaintiff was not instructed to continue the disinfection treatment by leaving the bulblets damp a week or two weeks after their immersion in the product, and such action admittedly was partly if not wholly responsible for the damage to the bulblets.

■ In the case at bar the instruction *not to apply the product to leafy vegetables*

is hardly a warning of the injurious effects upon cantaloupes, for in the common parlance of men a cantaloupe vine is not a leafy vegetable. Likewise, the suggestion that the product is most effective when applied while the air is quiet concerns the effectiveness of the kill of insects but gives no warning of the deadly effect upon cantaloupe plants. We cannot say as a matter of law that the warning on the label of defendant's product fulfilled defendant's duty to use ordinary care to avoid harming plaintiffs, and we hold the jury was entitled to conclude that defendant in failing to give plaintiffs a clearer or stronger warning of the dangers involved in the use of sulphur near cantaloupe violated its duty owed to plaintiffs.

We must next determine whether defendant's violation of duty might be found by the trier of fact to be legally the cause of the harm plaintiffs suffered. Defendant contends the Quick Flying Service was negligent in applying the sulphur in the wind, and such negligence (or the wind) was an independent intervening cause, which served to cut off defendant's responsibility, so that its violation of duty became a remote cause and it cannot be charged with liability for the damage. The problem of proximate causation has received consideration by this court in many cases, among them Inspiration Consolidated Copper Company v. Conwell, 21 Ariz. 480, 190 P. 88; Mesa City v. Lesueur, 21 Ariz. 532, 190 P. 573; Salt River Valley Water

Users' Ass'n v. Cornum, 49 Ariz. 1, 63 P.2d 639; Herzberg v. White, 49 Ariz. 313, 66 P.2d 253; and Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201. In the Conwell case, supra, we said [21 Ariz. 480, 190 P. 90]:

"* * * That cause is proximate without which the accident would not have happened. * * * Proximate cause is a question of fact, and a question for the jury if there is substantial evidence from which it may reasonably be deduced that the negligence shown was the proximate cause of the injury complained of. * * *"

In the Nichols case, supra [68 Ariz. 124, 202 P.2d 208], we find this statement taken from 38 Am.Jur. Negligence, Sec. 53:

"* * * Definitions of 'proximate cause' are easily given in general terms, but they are very difficult in practical application to the facts of particular cases. As has been said: 'What is the proximate cause of an injury in a legal sense is often an embarrassing question, involved in metaphysical distinctions and subtleties difficult of satisfactory application in the varied and practical affairs of life.' No exact rule for determining when causes are proximate and when remote has yet been formulated. Indeed, it is impossible by any general rule to draw a line between those causes of injuries which the law regards as sufficiently proximate, and those which are too re-

mote to be the foundation of an action.

"\* \* \*"

Thereafter in the Nichols case we took pains to point out that reasonable, prudent men may in some circumstances anticipate negligent conduct (or even criminal conduct) on the part of others, hence at times the failure to anticipate such conduct and take due precaution against it may constitute negligence. To summarize, the defendant, with knowledge that sulphur was dangerous to cantaloupe, undertook to advise plaintiffs to use sulphur on their cotton which it knew was in close proximity to Schrock's cantaloupe crop, and did not warn of the great risk of harm involved in such use. If the warning had been given the product probably would not have been applied while a breeze was blowing to the south, and might not have been applied at all. But, no warning was given, and the harm which defendant knew might result actually did result. We cannot say defendant's acts were so remote and far-removed from the injury suffered that the jury was not entitled to conclude as a matter of fact that defendant was at fault for the harm and that its acts were a proximate cause thereof.

We hold that the facts as found by the jury and the inferences legitimately drawn therefrom, taken in the light most favorable to plaintiffs, do establish a sufficient foundation for liability on the part of defendant on the theory of negligence. It was therefore error to enter judgment n. o. v. for defendant.

The judgment is reversed with directions that the lower court reinstate the findings of the jury and enter judgment for the plaintiffs and against the defendant for the sums plaintiffs and their insurance carrier paid to the melon grower, together with interest thereon, costs, and attorneys' fees incurred in the Schrock suit.

Judgment reversed with directions.

PHELPS, C. J., and STANFORD, LA PRADE and WINDES, JJ., concur.