579 P.2d 582

**POWDER HORN NURSERY, INC., Appellant,**

v.

**SOIL AND PLANT LABORATORY, INC., a corporation, Appellee.**

**No. 1 CA–CIV 3525.**

Court of Appeals of Arizona, Division 1, Department B.

March 16, 1978.

Rehearing Denied April 28, 1978.

Review Denied May 31, 1978.

3. R.I.Gen.Laws § 41–3–17 (1969).

Carson, Messinger, Elliott, Laughlin & Ragan, Robert W. Holland, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. A., Henry L. Timmerman, Phoenix, for appellee.

## OPINION

OGG, Judge.

In this appeal we must determine the proper standard of care a soil and plant laboratory must use in furnishing information to its customers.

The plaintiff/appellant Powder Horn Nursery, Inc. (Nursery) argues that the "reasonable man" test is the proper standard of care to be applied to this case. The defendant/appellee Soil and Plant Laboratory (Lab) takes the position that a plant laboratory is in a class of professional consultants and that any negligence claim against them must be measured by the professional standard of care existing within the community.

The Nursery, which conducts a commercial plant nursery in Scottsdale, Arizona, sued the Lab, located in Santa Clara, California, for $233,966.51 in damages arising from a plant loss allegedly caused by the negligence of the Lab. The Lab was

awarded summary judgment against the Nursery claim and was also awarded the sum of $245.37 on its counterclaim for services rendered. The trial court rendered the judgment upon the following grounds:

. . . It is the view of the Court that the Plaintiff must establish that the Defendant failed to conform with a standard of care existing within the community. There is absolutely no evidence brought to the Court's attention indicating any opinion by a qualified expert that the advice given by Defendant breached any existing standard of care. Absent such an opinion, there is no evidence showing a breach of duty owed by the Defendant to the Plaintiff.

The Nursery appeals from this judgment and the denial of its motion for reconsideration. The Nursery claims the court erred in granting summary judgment for the following reasons:

1. The proper standard of care by which the Lab's negligence should be judged is the reasonable man test and not the more demanding test of the prevailing community standard as applied in professional malpractice cases.

2. The conflict in the professional opinions by the respective party experts relative to the proper method of diagnosing the particular plant disease raised a genuine issue of material fact which bars the granting of a motion for summary judgment.

3. The Nursery under the provisions of the Restatement (Second) of Torts § 552 established a prima facie case of negligence against the Lab when it failed to inform the Nursery on the proper methods to combat a condition known as "iron toxicity" which was destroying the Nursery's potted plants.

The facts necessary for the determination of this appeal disclose that the Nursery is in the business of raising plants for commercial sale, with an operation of approximately 5,000 containers and some field grown stock. The Lab provides professional assistance to nurserymen and offers a wide variety of professional services ranging from soil, plant and water analysis to field calls and extended area visitations. The parties had a prior business relationship dating back to 1967 or 1968, whereby the Lab provided recommendations on proper fertilization and soil mix for the Nursery's container stock. The problem which triggered this litigation arose when the Nursery, by a letter dated May 25, 1970, asked the Lab for advice on the prevention of yellowing leaves in the Nursery's container grown stock. The Lab replied by letter dated June 8, 1970, with a pertinent recommendation that iron chelate be added to the fertilizer solution. The iron chelate was implemented with the watering on June 10, 1970, and approximately one week later the plants began looking more unhealthy.

On June 25, 1970, the Lab was advised by phone that the Nursery was encountering leaf burn problems. The Lab recommended leaching the plants with clear water to remove any contaminants and requested soil and leave samples for examination. The Lab received a soil sample from the Nursery on June 29, 1970, and leaf and water samples were received the following day. The Lab report, dated July 1, 1970, found the problem "which you have recently encountered appears to be due to sudden and extreme rate of fertilizer application with nitrogen being the primary element found in excess. The formula which has been provided and presumably has been in use could not possibly result in values in the range found, if the proportioner is operating in a normal manner." The report further stated:

Although the incidence of injury coincided in some degree with the application of iron, we cannot feel that this was responsible in view of the data obtained. It appears quite certain from data and our past experience that the problem is one of extreme concentration of fertilizer being applied. (We hope you will be able to figure out how this could have occurred and certainly avoid any further repetition.)

The results of the leaf and water supply analysis were compiled in a letter dated July 6, 1970. After studying the soil samples further, the Lab issued another report in a letter dated July 11, 1970. The results of these tests, as reported to the Nursery, indicated that sodium toxicity was the primary cause of the plant decline.

The plants continued to decline, resulting in considerable damage to the Nursery's potted plants. The Nursery then instituted suit, alleging the negligence of the Lab caused the plant damage.

The decisive issue is whether the court was justified in granting the Lab's motion for a summary judgment on the basis of the Nursery's failure to establish the requisite standard of care and a departure therefrom.

■ In order to show negligent conduct, there must be:

1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on his part to conform to the standard required . . . W. Prosser, Handbook of the Law of Torts, § 30 at 143 (4th ed. 1971) [Footnote omitted]

■ The Nursery argues that the Lab's negligence is established under the provisions of the Restatement (Second) of Torts, § 552 (1977), wherein the standard of care in such cases is set forth. The pertinent portion of § 552 reads:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to *exercise reasonable care or competence* in obtaining or communicating the information. [emphasis added]

The Lab argues that the comments to § 552 help clarify what "reasonable care and competence" mean and that the Restatement does not adopt the reasonable man standard of care when dealing with the dissemination of professional advice. We agree. The pertinent portion of comment (e) reads:

The particulars in which the recipient of information supplied by another is entitled to expect the exercise of care and competence depend upon the character of the information that is supplied. When the information concerns a fact not known to the recipient, he is entitled to expect that the supplier will exercise that care and competence in its ascertainment which the *supplier's business or profession requires* and which, therefore, the supplier professes to have by engaging in it. Thus the recipient is entitled to expect that such investigations as are necessary will be carefully made and that his informant will have normal *business or professional* competence to form an intelligent judgment upon the data obtained. [Emphasis added]

Case law interpreting § 552 indicates that this section must be read together with the applicable standard of care as set forth in the community of the professional. *Rhode Island Hospital Trust National Bank v. Swartz, Bresenoff, Yavner & Jacobs,* 455 F.2d 847 (4th Cir. 1972); *Peter Kiewit Sons' Co. v. Iowa Southern Utilities Co.,* 355 F.Supp. 376 (S.D.Iowa C.D.1973).

The Lab further argues that § 299A of the Restatement (Second) of Torts gives further indication that the drafters of the Restatement intended to adopt the professional standard rather than the reasonable man standard of care in determining the negligence duty question in this case. This section, in commenting upon the standard of conduct, reads:

Undertaking in Profession or Trade Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

It is our opinion that the pertinent portions of the Restatement dealing with the question before us indicate that the Lab owed the Nursery the duty to exercise the skill and knowledge normally possessed by members of the plant laboratory trade in similar communities.

The Nursery alleges that this case must be governed by *Crouse v. Wilbur-Ellis Co.,* 77 Ariz. 359, 272 P.2d 352 (1954). In *Crouse,* a local insecticide supplier furnished a certain insecticide to cotton farmers for application from an airplane, without warning the farmers that such insecticide might be damaging to a cantaloupe crop on a neighboring farm. The jury found the insecticide supplier liable on his failure to warn and also the flying service liable for its actions in applying the insecticide while the wind was blowing. The Nursery relies on one statement in the opinion wherein the court stated the insecticide supplier owed the plaintiffs a duty to use such care and caution as an ordinary prudent person in like circumstances would use to avoid harm to the plaintiffs. The Nursery interprets *Crouse* to stand for the legal proposition that all cases involving recommendations for plant treatments are to be governed by the reasonable man standard of care.

We do not believe *Crouse* governs the case before us for in *Crouse* the question of the proper standard of care was never an issue. Although one may reasonably find argument over the semantics it appears the court in *Crouse* was talking about the standard of care for a reasonably prudent man who was operating an insecticide business in the community.

In our opinion, the proper standard of care to be applied to the facts of this case was set forth in *Kreisman v. Thomas,* 12 Ariz.App. 215, 469 P.2d 107 (1970). *See, also U. S. Fibres, Inc. v. Proctor & Schwartz, Inc.,* 358 F.Supp. 449 (E.D.Mich. S.D.1972); *Nauman v. Harold K. Beecher & Associates,* 24 Utah 2d 172, 467 P.2d 610 (1970). In *Kreisman* the plaintiff claimed he got an ear infection as a result of the defendant's negligence in failing to properly adjust loaner hearing aids. This court,

on appeal, affirmed the order of the trial court directing a verdict for the defendant. This court found the plaintiff had failed to establish the requisite community professional standard of care and the defendant's departure therefrom. In addressing the issue, the court stated:

> Where, as here, the duty which the law recognizes arises because the defendant has held himself out to be trained in a particular trade or profession, the standard required for the protection of others against unreasonable risks is that the defendant exercise the skill and knowledge normally possessed by members of that trade or profession in good standing in similar communities. Restatement (Second) of Torts § 299A (1965); *Boyce v. Brown,* 51 Ariz. 416, 77 P.2d 455 (1938); *Stallcup v. Coscarart,* 79 Ariz. 42, 282 P.2d 791 (1955); *Prosser,* supra, § 32; *Reliable Electric Co. v. Clinton Campbell Contractor, Inc.,* 10 Ariz.App. 371, 459 P.2d 98 (1969). 12 Ariz.App. at 220, 469 P.2d at 112.

There is no dispute in this case that the Lab held itself to be an experienced and trained professional laboratory which provided advisory services for the growing of plants. As such, the law placed a duty upon the Lab to exercise the skill and knowledge normally possessed by members of that trade or profession.

The burden of establishing both the standard of care and the Lab's departure therefrom fell upon the Nursery. As we stated in *Kreisman:*

> The plaintiff has the burden of establishing what conduct this standard of care requires and that the defendant has failed to comply therewith . . . The requirement that there be proof of the requisite standard of conduct means that even if we assume that defendant provided plaintiff with a set of unfitted hearing aids which irritated plaintiff's ears, and that an infection developed because of this irritation, the existence of such assumed facts alone cannot make defendant liable to plaintiff for the damages caused by such infection. There must be an

additional showing that because of the relationship between the parties there was a duty or obligation imposed upon defendant requiring him to do something which he did not do; that is, that he failed to conform to a certain standard of conduct required in this particular transaction with plaintiff. 12 Ariz.App. at 220, 469 P.2d at 112.

\*　\*　\*　\*　\*　\*

Where, as here, the duty which the law recognizes arises because the defendant has held himself out to be trained in a particular trade or profession, the standard required for the protection of customers against unreasonable risks must be established by specific evidence. It cannot be left to conjecture nor be established by argument of counsel. In the absence of evidence establishing the requisite standard of care and that defendant's conduct failed to meet that standard, there was no basis upon which the jury could have found defendant liable to the plaintiff, and therefore the trial court did not commit error in refusing to submit the matter to the jury. 12 Ariz.App. at 221, 469 P.2d at 113.

In the depositions of the Nursery's two experts, neither could express any opinion of whether the Lab had failed to exercise that degree of care normally possessed by members of that trade. The Nursery's principal expert was Dr. Wallace H. Fuller, a professor and biochemist employed by the University of Arizona. It was his opinion that the plant damage "[w]as associated with the period of application of iron chelate Fe 330." When questioned relative to the Lab's standard of care and deviations therefrom, Dr. Fuller gave the following pertinent testimony:

Q. You can't say then that they failed to exercise care and competence, can you?

A. I have not made that accusation, no sir.

The only deviation of care testified to by Dr. Fuller was his statement that he personally would not want to make a plant diagnosis in such a case without an on-site inspection. When further questioned along these lines, he stated:

Q. You can't say here today then either that Soil and Plant Lab failed to exercise the degree of care that would be the standard of care under all the circumstances that existed at the time?

A. No, I can't answer that one way or the other. I have an opinion, and my opinion is that I wouldn't undertake business this way.

■ All parties agree it is easier to make an accurate diagnosis with an on-site inspection. The Lab offered on-site inspections at an additional fee to its customers. The fact that Dr. Wallace H. Fuller who is hired by a state agency, would prefer to diagnose only after an on-site inspection cannot reasonably set the inspection standard of care fixed upon a commercial plant laboratory. It is unrealistic to force a commercial plant laboratory located in California to come to Arizona for on-site inspection unless its customer requests such a service and is willing to pay the additional fee.

Mr. Lowell True, who works with the University of Arizona Agricultural Extension Service, was the Nursery's other expert. Mr. True lacked sufficient information and background to express an opinion on whether the advice from the Lab caused the damage to the Nursery's plants. He could not say that the Lab engaged in wrongful or negligent conduct or that the Lab failed to exercise care and competence in obtaining and communicating relevant information to the Nursery.

■ The standard of care issue is determinative of this appeal. After a review of the law and the evidence, it is our opinion that the Nursery failed to establish the requisite standard of care and the Lab's departure from such standard.

Affirmed.

JACOBSON, J., and EUBANK, P. J., Department B, concur.