462 P.2d 403

George G. MONTAGUE and Jane Doe Montague and Williams Auto Sales, Inc., a corporation, Appellants,

v.

Dorothy C. DEAGLE and E. A. Deagle, husband and wife, Appellees.

No. 2 CA–CIV 706.

Court of Appeals of Arizona.
Division 2.
Dec. 15, 1969.

**HOWARD**, Judge.

Appellee, Dorothy Deagle, sustained personal injuries while a passenger in an automobile driven by defendant, George G. Montague. The liability of the defendant was admitted prior to trial, leaving the assessment of damages as the only issue.

Appellants assign as error alleged prejudicial statements of appellees' counsel in final argument, insufficiency of evidence as to causation of injuries, and the giving of an instruction on the "aggravation of a pre-existing injury." The instruction was as follows:

> "If you should find that the Plaintiff suffers from some unfortunate condition which has not been proximately caused by any negligence on Defendant's part, you may not assess any damage for that condition against the Defendant. But one who by his negligence causes an injury to another must take the victim as he is and cannot complain that the person injured already had a weakened physical or emotional structure or condition which makes the injury more severe than might have been expected had the victim had a stronger body and mind.

> If a person's subnormal condition has been made worse by another's negligent conduct that worsening effect is an injury for which recovery may be had if the injured person is entitled to recovery at all. This is true even if the person's condition made him more susceptible to the possibility of ill effects than a normally healthy person would have been and even if a normal person would probably have survived the same experience without any substantial injury."

## IMPROPER ARGUMENT OF COUNSEL

Appellants complain that appellees' counsel made improper references in his closing argument to the financial condition of his client. Appellees' counsel contends that he made these remarks in retaliation to appellants' cross-examination of appellee, Dorothy Deagle, and appellants' sum-

Murphy & Vinson, by John U. Vinson, Tucson, for appellants.

Rees, Estes & Browning, by William D. Browning, Tucson, for appellees.

mation to the jury. Only the rebuttal argument of appellee was transcribed by the court reporter. We do not have the entire argument of both counsel. We are therefore unable to determine the issue. Lawless v. St. Paul Fire & Marine Insurance Company, 100 Ariz. 392, 415 P.2d 97 (1966).

## EVIDENCE OF CAUSATION

■■ The general rule is that medical testimony as to the mere possibility that an accident has a causal connection with an existing condition is insufficient to warrant a finding that the accident caused the condition. However, the rule is likewise that if there is medical evidence of the possibility of the existence of the causal relationship together with other evidence or circumstances indicating such a relationship, the finding that the accident caused the injury will be sustained. Coca-Cola Bottling Company of Tucson v. Fitzgerald, 3 Ariz.App. 303, 413 P.2d 869 (1966); Ideal Food Products Company v. Rupe, 76 Ariz. 175, 261 P.2d 992 (1953).

Appellants contend that there was no showing of any causal connection between the accident and Mrs. Deagle's complaints of dizziness.

The evidence indicates: that Mrs. Deagle was a passenger in the front seat of a car driven by defendant Montague, an employee of appellant, Williams Auto. The automobile ran into a telephone pole and Mrs. Deagle's head went through the windshield. She was bleeding profusely and was rushed to Davis-Monthan Hospital. She was in the emergency room for three hours and forty-five minutes while they sutured the various facial lacerations. Mrs. Deagle was in the hospital for two days. While in the hospital she experienced dizziness and also a great deal of pain in her head. At home she was in bed, on and off, for approximately ten days, returning to bed because she could not keep her balance. She has permanent scarring, as a result of the accident, together with numbness of the forehead as a result of the

formation of scar tissue at the site of one of the lacerations.

The evidence further showed that she had been troubled with dizziness in 1960 and had been hospitalized for this problem for twenty-four days. This condition recurred in 1962. Between 1962 and the happening of the accident in 1966, she had no symptoms of dizziness. Mrs. Deagle did not tell Dr. Bernstein, her treating physician for this accident, that she had experienced any dizziness prior to the date of the accident.

Dr. Bernstein was given a history of the incident. Mrs. Deagle told Dr. Bernstein, who first saw her approximately two and a half years after the accident had occurred, that as a result of the accident she sustained head injuries, severe facial lacerations, earaches, and impaired hearing. She further told him that she was experiencing dizziness. Dr. Bernstein examined her ears, nose, and throat and testified as follows:

"A Her symtomatology; in other words, the things that she complained of, did indicate to me that she had a mild labyrinthine post-concussion syndrome. * * *"

* * * * * *

He also testified:

* * * * * *

"A * * * I interpreted her to have suffered enough injury to her head to have jolted or concussed this nervous tissue because she complained of dizziness, intermittently, since that time. * * *"

The following question was then asked the doctor by appellees' attorney and he gave the following answer:

"Q Doctor, but in addition to dizziness does that also affect the balance of the person; that is, their stability and being able to orient themselves?

A Oh, yes, that's the characteristic of it [labyrinthine concussion]. In other words, a normal person as he walks along will have to have a constant reading of just where he stands in relation to space.

But a person who has a labyrinthine concussion will experience odd things. A staggering sensation would perhaps be one of the mildest, when you feel things just weave around underneath you and you have to constantly correct yourself as you walk along.

\* \* \* \* \* \*

There are other symptoms too, but this is what she complained of. This is what I interpreted her to have."

Appellees' attorney also asked the following questions and the doctor gave the following answers:

"Q The fact that she has it you are sure of to a reasonable medical certainty or probability but the extent of it you are not sure of; is that correct, sir?

A Well, I'll state it as fairly as I can.

Q Okay.

"A A person suffers an accident. Following that they complain of a symptom which is indicative of a concussion of the labyrinth. I have to assume that the dizziness is related to the accident and I'm willing to do so. If she had not complained of dizziness I would conclude that she didn't have any concussion."

When Dr. Bernstein was confronted with the fact that Mrs. Deagle had had prior episodes of dizziness and was asked whether or not this would change his opinion as to whether the accident caused her present symptoms, namely, dizziness, he said, among other things, the following:

\* \* \* \* \* \*

"A I would say now the fact that she had this symptom before indicates to me only that she had a sensitive organ. \* \* \*"

The doctor testified that his original statement of causation would have to stand and in answer to a question, concerning the prior dizziness, posed by appellees' attorney, he answered:

"A (Interposing) It depends on how you want to look at it. If she says maybe she didn't have this condition before

maybe she wouldn't have suffered this insult now. And then again you might say the fact that she had it before made her perhaps a little more susceptible to concussive vertigo, you see."

The medical testimony in this case is reminiscent of the testimony in the case of Apache Powder Company v. Bond, 61 Ariz. 184, 145 P.2d 988 (1944). In that case the deceased was in apparent good health but had a history indicating a prior tubercular condition. He fell and sustained an injury because of the inhalation of gas of sufficient quantity to cause unconsciousness. As a result of said fall he sustained a fractured skull, followed shortly thereafter by a severe case of disabling active tuberculosis. Two doctors testified to the possibility that the accident and the injury contributed to his active tubercular condition. The court first stated that a doctor's opinion does not have to be positive. The court then said:

"\* \* \* [W]e think that the historical circumstances prior and subsequent to the accident, together with the nature of the accident, is sufficient, together with the doctors' testimony of possible causal connection as would give legal validity to the commission's conclusions. \* \*"

Considering the fact that the plaintiff did suffer severe head injuries, that she had had no symptoms of dizziness for at least four years prior to the date of the accident, and that while in the hospital immediately after the accident, the symptoms of dizziness recurred, together with the doctor's testimony, we find that there is sufficient evidence to show a causal connection between the accident and the dizziness.

We further believe that the testimony related herein was sufficient to justify the court giving the instruction on the aggravation of a pre-existing condition.

For the foregoing reasons the judgment of the trial court is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.