469 P.2d 107

Albert KREISMAN, Appellant,

v.

Donald R. THOMAS and Isabelle Thomas, husband and wife, dba Perry's Hearing Aid Service, a division of Specialized Hearing Aid Service, Inc., Appellees.

No. 1 CA–CIV 990.

Court of Appeals of Arizona, Division 1, Department B.

May 11, 1970.

Rehearing Denied May 25, 1970.

Review Denied June 16, 1970.

217

Green & Berman, by David M. Berman, Phoenix, Attys., for appellant.

Anderson & Holloway, by Paul W. Holloway, Phoenix, Attys., for appellees.

HAIRE, Judge.

█ In this action involving the alleged negligence of a hearing aid dealer, the trial court directed a verdict for the defendant at the close of plaintiff's case. On this appeal we are called upon to determine whether or not the evidence was sufficient to require submission of the case to the jury. In making this determination we will view all of the evidence in a light most favorable to the plaintiff-appellant, and draw all possible inferences in plaintiff's favor. Subsidiary questions concerning the propriety of the trial court's denial of plaintiff's subsequent motion for continuance and its denial of plaintiff's motion for new trial based upon newly discovered evidence will also be considered.

Insofar as concerns the question of the sufficiency of the evidence, the defendants-appellees (hereinafter defendant) contend that the evidence was insufficient for two reasons: First, that plaintiff failed to establish a *prima facie* case of negligence in that there was insufficient evidence to establish a standard of care and a departure therefrom; and, second, assuming the establishment of a standard of care and a departure therefrom, that the evidence was insufficient to show that defendant's allegedly negligent conduct proximately caused the injuries of which plaintiff complains.

The evidence shows that defendant was a hearing aid dealer and that plaintiff was a customer of his. On May 8, 1967, plaintiff came to defendant's store and agreed to purchase a new set of hearing aids. Because these newly ordered hearing aids were not in stock and because plaintiff's present hearing aids were not working properly, defendant loaned hearing aids to plaintiff to wear until the new hearing aids were received. Defendant attached these "loaner" hearing aids to plaintiff's eyeglasses and ear molds before plaintiff

left defendant's store. The next day, having decided that the newly ordered hearing aids would cost more than he wanted to spend, plaintiff called defendant by telephone and asked to have the order cancelled, and defendant agreed to do so. Plaintiff then returned to defendant's store on May 12th or 13th, and decided that he might want to purchase a less expensive pair of hearing aids which defendant had in stock. Defendant agreed that plaintiff could use this new set of hearing aids to see if he liked them. However, at the time he allowed plaintiff to try out the new set, defendant advised plaintiff that he wouldn't make any adjustments for fitting purposes until plaintiff had decided whether or not he actually wanted to buy these particular hearing aids because of the possibility that if plaintiff decided not to buy them they could not thereafter be properly readjusted to fit some future customer.

After defendant attached the new set of hearing aids to plaintiff's eyeglasses and ear molds, plaintiff left the store and thereafter developed a severe ear infection known as *otitis externa*. This ear infection is asserted to have resulted from defendant's alleged negligence in not properly adjusting this new set of hearing aids at the time he loaned them to plaintiff and attached them to plaintiff's glasses. Additional factual details will be stated as pertinent to questions hereinafter discussed.

## PROXIMATE CAUSE

■ The parties agree that because of the nature of the injuries here involved, expert testimony bearing on causation was required. Such causation must be shown to be *probable* and not merely *possible*, and generally expert medical testimony that a subsequent illness or disease "could" or "may" have been the cause of the injury is insufficient. Dreyer v. Lange, 74 Ariz. 39, 243 P.2d 468 (1952); Phillips v. Stillwell, 55 Ariz. 147, 99 P.2d 104 (1940); Hartford Accident & Indemnity Co. v. Industrial Commission, 38 Ariz. 307, 299 P. 1026

(1931); Harris v. Campbell, 2 Ariz.App. 351, 409 P.2d 67 (1965); and Annot., 135 A.L.R. 516, 517 (1941). Both parties further recognize that there have been Arizona decisions which have relaxed the above-stated general rule concerning expert medical testimony and have sustained verdicts based upon expert testimony as to the *possible* cause, when there is sufficient additional evidence indicating the specific causal relationship. Montague v. Deagle, 11 Ariz.App. 106, 462 P.2d 403 (1969); Ideal Food Products Co. v. Rupe, 76 Ariz. 175, 261 P.2d 992 (1953); Coca-Cola Bottling Co. of Tucson v. Fitzgerald, 3 Ariz. App. 303, 413 P.2d 869 (1966); and Apache Powder Co. v. Bond, 61 Ariz. 184, 145 P.2d 988 (1944). This exception to the general rule is well stated in Coca-Cola Bottling Co. v. Fitzgerald, *supra*, 3 Ariz. App. at 306, 413 P.2d at 872, as follows:

"To establish the causal connection between an accident and injury, a *sine qua non* of liability, medical testimony as to the *possibility* of such causal connection, without more, is insufficient. But if there is medical evidence of the possibility of the existence of the causal relationship together with other evidence or circumstances indicating such relationship, the finding that the accident caused the injury will be sustained." (Italics in original).

Although the parties agree as to the foregoing legal principles, when it comes to applying these legal principles to the facts, this harmony ceases and is supplanted by discord.

In this case the only expert medical testimony was from plaintiff's physician, Dr. Harris. He testified (1) that a mechanical irritation *could* result in the type of infection here involved, and (2) that an improperly fitting ear mold or short tubing (the connection from the hearing aid to the ear mold) could result in or be a mechanical irritation. Although his testimony established that he was very familiar with plaintiff's injury, having treated that inju-

ry as plaintiff's doctor over an extended period of time, he was never asked the direct question of whether, in his expert opinion, plaintiff's injury was in fact caused by a mechanical irritation resulting from the ill-fitting hearing aid ensemble. Thus, not only did the plaintiff fail to establish through his expert witness that his infection was *probably* the result of the alleged negligent conduct of the defendant, but there was also a failure of direct testimony that this *particular injury* "could have" or "might have" resulted from defendant's alleged negligent conduct. Fairly summarized, plaintiff's doctor's testimony did establish *in the abstract* through a two-step possibility sequence that an ill-fitting hearing aid "could" cause a mechanical irritation and that an *otitis externa* infection "could" result from a mechanical irritation. This is not the type of expert witness "could" testimony found in Ideal Food Products Co. v. Rupe, *supra,* Apache Powder Co. v. Bond, *supra,* Coca-Cola Bottling Co. v. Fitzgerald, *supra* and Montague v. Deagle, *supra,* the cases relied upon by plaintiff. The opinions show that in those cases the expert witnesses' testimony was not in the abstract, but rather was directed specifically to the point that, in the opinion of the expert witness testifying, the specific injury there involved "could" have been caused by the liability-imposing event. Here, the evidence simply does not show whether in the opinion of plaintiff's expert witness this specific infection *did* result from, *could* have resulted from, or *did not* result from the alleged negligence of defendant.

■ Plaintiff's "other evidence" relating to proximate cause is clearly not sufficient, by itself, to show that plaintiff's illness was a proximate result of the alleged negligent conduct of the defendant.

Dr. Harris testified that the infection was a rather common type of infection, and that in the winter he would see at least two such cases a day and in the summer eight to ten cases a day; that it could have many different causes; that the infection could come into being without any mechanical inducement, for example, from swimming or from perspiring; that he had no way of knowing how long plaintiff's infection had been going on, that it could have been chronic or could have completely developed its acute status in one day.

Plaintiff testified that he never had ear infections before; that he had not previously had any trouble or irritations from the ear molds; and that he didn't have any pain when he came in on May 12th or 13th. He further testified that the hearing aids in question " * * * felt pretty good at the time, when I first put them on, a little tight, but they felt pretty good." That after a couple of hours he " * * * felt a little dizzy and my ears were a little in pain"; that during the period immediately preceding May 12th or 13th he didn't have water stuck in his ears, that he didn't pick at his ears and in general didn't place any foreign substances in his ears other than the ear molds in question.

In our opinion the expert testimony in this case falls short of the minimal standards previously established by the Arizona decisions in situations requiring proof of causation by expert testimony. However, because of the existence of other grounds which adequately support the granting of the directed verdict by the trial court, we need not determine whether this expert testimony, together with the above-mentioned "other" evidence, is sufficient to establish a *prima facie* showing of causation.

## STANDARD OF CARE AND DEPARTURE THEREFROM

■ In the foregoing portion of the opinion we have discussed whether there was *sufficient evidence to establish that* plaintiff's injuries were the proximate result of the alleged negligent acts of defendant. Such discussion presupposed that defendant was negligent. Of course it is fundamental that there can be no cause of action for negligence unless there has been some negligent conduct on the part of the

defendant. The traditional elements which generally must be proved in order to establish negligent conduct are as follows:

"1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

"2. A failure on his part to conform to the standard required." W. Prosser, Handbook of the Law of Torts § 30 at 146 (3d ed. 1964). (Footnote omitted).

See also Restatement (Second) of Torts § 281 (1965); Hersey v. Salt River Valley Water Users' Association, 10 Ariz.App. 321, 458 P.2d 525 (1969); and Shafer v. Monte Mansfield Motors, 91 Ariz. 331, 372 P.2d 333 (1962). Where, as here, the duty which the law recognizes arises because the defendant has held himself out to be trained in a particular trade or profession, the standard required for the protection of others against unreasonable risks is that the defendant exercise the skill and knowledge normally possessed by members of that trade or profession in good standing in similar communities. Restatement (Second) of Torts § 299 A (1965); Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455 (1938); Stallcup v. Coscarart, 79 Ariz. 42, 282 P.2d 791 (1955); Prosser, *supra* § 32; Reliable Electric Co. v. Clinton Campbell Contractor, Inc., 10 Ariz.App. 371, 459 P.2d 98 (1969).

■ The plaintiff has the burden of establishing what conduct this standard of care requires and that the defendant has failed to comply therewith. Boyce v. Brown, *supra*; Stallcup v. Coscarart, *supra*; Prosser, *supra* § 38. However, it is not necessary that this standard of care be proved by plaintiff's own witnesses—it may be proved by the testimony of defendant himself. Vigil v. Herman, 102 Ariz. 31, 424 P.2d 159 (1967). The requirement that there be proof of the requisite standard of conduct means that even if we assume that defendant provided plaintiff with a set of unfitted hearing aids which irritated plaintiff's ears, and that an infection developed because of this irritation, the existence of such assumed facts alone cannot make defendant liable to plaintiff for the damages caused by such infection. There must be an additional showing that because of the relationship between the parties there was a duty or obligation imposed upon defendant requiring him to do something which he did not do; that is, that he failed to conform to a certain standard of conduct required in this particular transaction with plaintiff.

■ Here, plaintiff relied upon the testimony of defendant to establish the requisite standard of care. Plaintiff contends that this standard was established when defendant testified as follows:

"Q. So is it not true that the general standard of care and conduct in your business as a dealer and other dealers in this community is to adjust the arms on these hearing aids of the type that attached to glasses?

"A. That's right.

"Q. And is it not true that either the measuring or extending of such tubing would also be an ordinary and proper standard of care of a dealer such as yourself or other dealers such as yourself here in the community?

"A. It would."

These two questions and answers taken out of context would appear to establish a standard of care which would have required that defendant adjust the hearing aids here involved so that they were a perfect fit for plaintiff's head and ears. However, these excerpts do not present a complete or fair picture of defendant's testimony concerning the applicable standard of care. It must be kept in mind that the hearing aids in question had not been *sold* to plaintiff but were merely *loaned* to him so that he could try them out so as to make up his mind whether or not he desired to purchase them. There was no evidence establishing such a standard of care under these circumstances. This is made

very clear by defendant's response to questions by plaintiff's counsel as follows:

"Q. And is that not part of your business, to set these up, when you fit somebody with those by conforming that to the shape of the individual's head?

"A. It is, when I *sell* that type of an instrument.

"Q. Did you do that conformation when you placed these in the possession or on Mr. Kreisman?

"A. I did not and I told him the reason why.

"Q. You told him the reason why?

"A. Yes.

"Q. Did he ask you why you were not conforming these or bending these at that time?

"A. No. I told him that I would have to make adjustments in those particular instruments.

'Well,' he said, 'I realize that.'

'But,' I says, 'I won't make the adjustments until you decide whether you want to buy that particular hearing aid, because if I make the adjustment, it's possible that I couldn't adjust it to someone else or I may damage the case and have to have it recased.'" (Emphasis added).

Plaintiff, having elected to rely upon defendant's testimony to establish the requisite standard of care, is bound by that testimony. Derr v. Bonney, 38 Wash.2d 678, 231 P.2d 637 (1951); Stallcup v. Coscarart, *supra*. While defendant's testimony may have established a standard of care requiring a fitting or adjustment to the customer's comfort when the hearing aids are *sold* to a customer, it certainly did not establish the existence of such a standard of care when hearing aids are *loaned* as in this case, and in fact, defendant's testimony expressly negates the existence of such a requirement.

In an attempt to overcome this deficiency plaintiff argues in his brief that "[i]t is obvious that the standard of care which necessitates these adjustments is for the sole purpose of preventing injury to a customer." From this premise he argues that therefore that standard of care ought to be applicable to the facts here involved. The only evidence in this case relating to the reason why a dealer might be required to adjust hearing aids is that such adjustments are made for the comfort of the purchaser. There is no evidence that such adjustment is for the purpose of preventing injury, nor is there any evidence that either plaintiff or defendant, or the expert witness, Dr. Harris, had ever heard of any injury or infection caused by ill-fitting hearing aids.

■■■ Where, as here, the duty which the law recognizes arises because the defendant has held himself out to be trained in a particular trade or profession, the standard required for the protection of customers against unreasonable risks must be established by specific evidence. It cannot be left to conjecture nor be established by argument of counsel. In the absence of evidence establishing the requisite standard of care and that defendant's conduct failed to meet that standard, there was no basis upon which the jury could have found defendant liable to plaintiff, and therefore the trial court did not commit error in refusing to submit the matter to the jury. Having concluded that the requisite standard of conduct was not established by the evidence, it is unnecessary for us to consider defendant's further contention that even assuming the proof of the requisite standard of care, there was no evidence that defendant's conduct departed therefrom.

■■■ Plaintiff raises two additional contentions which will be briefly discussed. First, it is urged that the trial court committed error in refusing to grant plaintiff a continuance and in refusing to allow him to reopen for the purpose of presenting additional expert testimony. A motion for continuance is addressed to the sound discretion of the trial court, and we will not reverse unless there is a showing that the trial court has clearly abused such discre-

tion. Here, the motion for continuance was made after the trial court had granted defendant's motion for a directed verdict, and although plaintiff's motion purports to be for continuance from 4:40 p. m. to 9:00 a. m. the following morning, the transcript of proceedings indicates that because of the circumstances involved, any such reopening by plaintiff for the purpose of presenting testimony by a new expert medical witness would have necessitated a continuance of this jury trial for at least two weeks. Further, plaintiff was not even certain he could get a new expert medical witness who would testify as plaintiff desired on the issue of proximate cause.[1]

Plaintiff has the obligation of adequately preparing his case and should know what his own expert witness will or will not testify to. Under the circumstances of this case, we find no abuse of discretion by the trial court in denying the motion for continuance. Dietrich v. United States Shipping Board Emergency Fleet Corp., 9 F.2d 733 (2 Cir. 1925), cert. denied, 278 U.S. 647, 49 S.Ct. 82, 73 L.Ed. 560 (1928); Klinger v. Conelly, 2 Ariz.App. 169, 407 P.2d 108 (1965); Pima County v. DeConcini, 79 Ariz. 154, 285 P.2d 609 (1955); City of Tucson v. O'Rielly Motor Co., 64 Ariz. 240, 168 P.2d 245 (1946); and 17 C.J.S. Continuances § 70 (1963).

█ Plaintiff further contends that the trial court erred in refusing to grant his motion for new trial. The only ground urged on appeal in support of this contention is that the motion should have been granted because of newly discovered evidence. It is not necessary for us to discuss the boundaries within which the trial court may ordinarily exercise its discretion where newly discovered evidence is actually involved, because here no "newly discovered evidence" was presented. The testi-

mony of a new expert witness does not fit into that category. See Eller v. Paul Revere Life Insurance Co., 230 Iowa 1255, 300 N.W. 535 (1941) and cases cited therein at pp. 538–39; Monday v. Millsaps, 37 Tenn. App. 371, 264 S.W.2d 6 (1953).

The judgment of the trial court is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.

venience of having to testify and then states:

"* * * [B]ecause of this animosity, he has actually even changed some of this testimony around from his deposition on causation and has been completely uncooperative."

---

1. That Dr. Harris, the expert witness previously used by plaintiff, would not testify as desired is evidenced by counsel's remarks in argument in opposition to the granting of defendant's motion for directed verdict. Counsel alludes to the doctor's animosity by reason of the incon-