NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LAWRENCE T. SEIDMAN, et al., *Plaintiffs/Appellants*,

v.

FRANK D. WEILER, et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0261
FILED 5-16-2019

Appeal from the Superior Court in Maricopa County
No. CV2015-003144
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Eckley & Associates, PC, Phoenix
By J. Robert Eckley, John Duke Harris
*Counsel for Plaintiffs/Appellants Seidman*

Radix Law, PLC, Scottsdale
By C. Adam Buck, Stephanie A. Webb
*Counsel for Defendants/Appellees Weiler*

Manning & Kass Ellrod Ramirez Trester, LLP, Phoenix
By Anthony S. Vitagliano, Robert B. Zelms, Fatima M. Badreddine
*Counsel for Defendants/Appellees Realty One, James Sexton, Anita Burg*

Lipson Neilson, PC, Phoenix
By Daxton R. Watson, Michael H. Orcutt
*Counsel for Defendants/Appellees RE/MAX, VDH Investments, Kathy Laswick,
Michael Martinez, Maricruz Martinez*

_____

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Kent E. Cattani and Judge James P. Beene joined.

_____

**W E I N Z W E I G**, Judge:

¶1 Plaintiffs Lawrence Seidman and the Lawrence T. Seidman Revocable Trust ("Buyer") appeal the superior court's entry of summary judgment in favor of Frank and Ana Weiler ("Sellers"); Realty One Group, James Sexton, Anita Burg (collectively, "Realty One Defendants"); and ReMax Excalibur, Kathy Laswick, Michael Martinez and Maricruz Martinez (collectively, "ReMax Defendants"). We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 This lawsuit concerns the sale of a house. Buyer purchased a house in Scottsdale from Sellers in April 2013. Sellers were represented by the ReMax Defendants. Buyer was represented by the Realty One Defendants. Buyer later claimed to have discovered latent defects with the house in March and December 2014, and then sued all the parties associated with the transaction in February 2015, including the Sellers, the ReMax Defendants and Realty One Defendants, but not the home inspector.

¶3 Sellers purchased the house in 1987, two years after it was built, and owned it for 26 years. They hired the ReMax Defendants to sell the house in November 2012. The ReMax Defendants toured the property and asked the Sellers to complete a blank Seller's Property Disclosure ("SPDS"), which was later uploaded into the Multiple Listing Service ("MLS") database. Sellers signed the SPDS on November 18, 2012, and certified the information was "true and complete to the best of [their] knowledge."

¶4 The house was listed for sale in December 2012. The "Public Remarks" section of the MLS listing stated: "Second owners of this home, this abode has been lovingly maintained" and "[t]his home has newer A/C units and a roof, which should provide for low maintenance in years to come." The original listed price was $485,000. Based on feedback, the price was reduced to $439,000 on March 14, 2013.

¶5 Two days later, Buyer extended a counteroffer and negotiated a lower purchase price of $432,000. Buyer and Sellers entered a written

purchase contract on March 16, 2013. Buyer initialed a "BUYER ACKNOWLEDGEMENT" in the contract, written in bold and all capital letters, where he "recognize[d], acknowledge[d], and agree[d]" that the ReMax and Realty One Defendants "are not qualified, nor licensed, to conduct due diligence with respect to the premises or the surrounding area." The provision further "instructed" Buyer to conduct due diligence, which "is beyond the scope of the Broker's expertise and licensing," and Buyer agreed to "expressly release[] and hold[] harmless" the ReMax and Realty One Defendants "from liability for any defects or conditions that could have been discovered by inspection or investigation."

¶6        The Realty One Defendants separately furnished a 10-page Buyer Advisory to Buyer, created by the Arizona Department of Real Estate. Buyer "acknowledge[d] receipt" of the Advisory on March 16, 2013, with an electronic signature of his initials on each page (11 times in all) and his full electronic signature on the final page. The Advisory explained that real estate agents are "generally not qualified to discover defects or evaluate the physical condition" of the house; emphasized the limited duties of Realty One Defendants to Buyer, which do not include "verifying the accuracy of" the SPDS or MLS listing; warned that Buyer "is responsible for" conducting due diligence prior to purchase; and cautioned that MLS listings are "similar to an advertisement" and Buyer "should verify any important information contained in the MLS."

¶7        Buyer received the SPDS from Sellers on March 18, "acknowledg[ing] receipt" with his electronic initials on each page and an electronic signature at the end. Ms. Burg of Realty One Group avowed that she read and reviewed the SPDS with Buyer "line by line." In response to questions about roof issues, the Sellers disclosed their "aware[ness] of" past roof leaks, water damage and roof repairs. They said the leaks "were identified and corrected" and described the repairs as "[s]un side re-cover older tile approx 12 yrs." But otherwise, the couple was not aware of "any interior wall/ceiling/door/window/floor problems," "any cracks or settling involving foundation, exterior walls or slabs," or "any past or present mold growth."

¶8        Once again, the SPDS advised Buyer to verify the disclosures with a professional and specifically directed him to "CONTACT A PROFESSIONAL TO VERIFY THE CONDITION OF THE ROOF." It also included an acknowledgement from Buyer "that the information contained herein is based only on the Seller's actual knowledge and is not a warranty of any kind. Buyer acknowledges Buyer's obligation to investigate any material (important) facts in regard to the Property. Buyer is encouraged

3

to obtain Property inspections by professional independent third parties and to consider obtaining a home warranty protection plan."

¶9        The due diligence period then ensued.  The contract afforded Buyer 10 days to perform all desired inspections of the property.  Buyer asked Burg to recommend a home inspector and received a list of licensed home inspectors with good reputations.  Burg told Buyer he was free to choose any home inspector and did not have to choose from the list.  Buyer quickly picked and retained the second inspector on the list, Don Barenz of WIN Home Inspection.   The Realty One Defendants received no referral fee.

¶10        The home inspection occurred on March 19.  Buyer and Burg attended.  Sellers also attended, which facilitated a convenient back-and-forth dialogue in which Buyer asked "questions about things" he had noticed during the inspection, including "the condition of the roof" and "concern[s] about the moisture" in the home, pointing to "a piece of baseboard molding in the master bath that had water discoloration."  Buyer inquired about a potential leak in the garage roof, which Frank Weiler said "was taken care of."

¶11        Buyer accompanied the home inspector during the inspection.  He even climbed on the roof with the inspector to discuss roof issues.  Buyer "jumped up and down on the roof," remarked that it "seem[ed] flexy," and asked the inspector whether this reflected "water damage or rot."   The inspector responded it was "standard" and "of no concern" because the builders "used a particular dimension of underlay drywall [or] plywood."   Buyer also asked about the gaps and caulking recommendation of the inspector because "if it needed caulking, maybe there's water that came in and that's why the roof was flexing because it was rotted or weak, but he said no."

¶12        The home inspector provided his "Extended Home Inspection Report," which highlighted various roof-related issues and "recommend[ed] asking the current owner about any past leaks and roof repairs."   The inspector found gaps in the flashing, moisture-trapping debris, and evidence of past or present leaking:

> **Roof – Debris on Roof:**  Maintenance. There is debris on the flat roof.  The debris will trap moisture as well as clog scupper system.  All debris should be removed.
>
> **Roof – Flashing/Caulking:**  Maintenance.  There is a gap above the flat roof flashing in a number of areas.   I

recommend caulking these gaps with a good quality roof mastic.

**Roof – Indications of Leaking:** Yes. I noted sign[s] of possible roof leak in the garage ceiling. I was unable to confirm if these a[re] from a past leak o[r] an[] active leak. I recommend asking the current owner about any past leaks and roof repairs.

¶13 The report further noted defects to the exterior structure, including "an open penetration on the east side of the home that is prone to moisture and pest intrusion [and] should be sealed," and "marginal to poor drainage away from structure" on the east side. The inspector "recommend[ed] monitoring these areas during and after periods of heavy rainfall," and "grading and making any other needed repairs to ensure all water drains away from the structure," if necessary.

¶14 Buyer had a few more questions after the home inspection on March 21, including about roof leaks. Burg emailed Buyer's questions to the ReMax Defendants who, in turn, forward them to Sellers. Burg inquired: "There are signs of a possible roof leak in the garage ceiling. Can you confirm with the owner if this is from a past leak or active leak? And if [from a] past leak has [it] been fixed?" Sellers responded: "The roof leak seen in the garage is from a previous leak situation from years ago that was corrected, and a recent re-seal of that portion of the flat roof was completed in December last year."

¶15 That same day, Buyer formally responded to the SPDS with his Buyer's Inspection Notice and Seller's Response ("BINSR"). Buyer sought a credit or repair for roofing and other issues, including a "[c]redit or Professional Roofer to repair gap above the flat roof flashing in number of areas," and "[c]redit or [d]etermine source of moisture damage to base of master bathroom cabinets near shower and repair." Buyer electronically signed the BINSR, indicating he had "completed all desired [i]nspection[s]" and "verified all information deemed important [from the] MLS or listing information," and "acknowledg[ing]" the ReMax and Realty One Defendants "assume no responsibility for any deficiencies or errors made" by the inspector and "neither the Seller nor Broker(s) are experts at detecting or repairing physical defects in the Premises."

¶16 Sellers tendered a counteroffer on March 22 to "provide Buyer [a] $1,000 credit toward [his] closing costs, escrow costs and/or lender fees,

in lieu of all repairs on BINSR." Buyer accepted the counteroffer later that day and the parties signed an addendum to the purchase contract.

¶17 Buyer completed a final walk-through inspection on April 19 and acknowledged with his signature that "the property [is] as represented at the time the purchase contract was accepted by the parties, and any subsequent repairs that were agreed to . . . have been completed to the satisfaction of [Buyer]."

¶18 Buyer began renovating the house within "a few days to a week" after escrow closed on April 18. He budgeted around $20,000 for extensive repairs and remodeling, including painting, replacing baseboards, fixing fireplace and tile cracks, refinishing doors, and building various items. Buyer alleges he discovered "more and more things . . . that needed fixes" as he made renovations.

¶19 Buyer claims he discovered roof problems almost a year later, after "heavy rainfall during the late summer to fall 2014" caused "paint and caulking . . . to peel and crack." Buyer said he found water leaks and mold in the walls and water pooling in front of the home. Buyer, however, alleges he only learned the roof was not "newer" on December 11, 2014, when he and his attorney climbed onto the roof and discovered "bubbles."

¶20 Buyer filed this lawsuit on February 26, 2015. He sued Sellers for negligent misrepresentation, consumer fraud, common law fraud, mutual mistake and breach of contract for failure to disclose latent defects; sued the ReMax Defendants for negligence, negligent misrepresentation, consumer fraud and common law fraud; and sued the Realty One Defendants for breach of fiduciary duty, negligent misrepresentation, constructive fraud and common law fraud.[1]

¶21 The same day, Buyer filed a formal certificate under A.R.S. § 12-2602, where his counsel avowed "[t]hat claims currently contained in the Plaintiff's Complaint allege matters which do require expert opinions and testimony in support thereof." Buyer disclosed five expert witnesses during discovery, including a construction defect expert named George Frank and a real estate professional expert named Curtis Hall. In September 2016, Buyer disclosed Hall as an expert "to render opinions

---

[1] Buyer did not sue the home inspector, despite complaining about his work. Buyer blames the ReMax Defendants for letting him sign a home inspector's service agreement that released the home inspector from "liability for incompetence."

about the professional standards of care for all such real estate licensees and to apply same to the issues in this case and to state, by expert opinion, whether the licensee's conduct in question has fallen below the applicable standard of care." Meanwhile, he disclosed Frank as an expert who "would discuss and evaluate construction problems" with the home and calculate the cost of repair.

¶22     On February 6, 2017, Sellers moved for summary judgment on all claims asserted against them, and the ReMax and Realty One Defendants joined. Before having to respond, Buyer asked for more time to conduct discovery (seven depositions) under Arizona Rule of Civil Procedure ("Rule") 56(d), and to extend the discovery deadline (set to expire on February 10). Buyer pointed to an impending mediation in support. The court denied Buyer's request for Rule 56(d) relief and ordered him to respond by March 17. The court did, however, extend the discovery deadline on March 21 under a stipulated order.

¶23     Buyer responded on March 17, arguing that genuine issues of material fact precluded summary judgment on his fraud and misrepresentation claims. He asserted "[t]here is significant proof" that Sellers knew about and concealed the "roof[ing] problems, water damages and other defects." He then pointed to several items for "[s]uch proof," including the SPDS, an email exchange between agents, an Allstate Insurance letter and Frank's expert report.

¶24     The court held oral argument on April 21 and took the matter under advisement. In the interim, Buyer deposed Frank and Ana Weiler and moved to supplement the "facts and legal arguments" in his opposition to summary judgment on May 25. But Buyer included no additional legal arguments and only pointed to deposition testimony that Sellers had hired a licensed contractor "to perform construction work" on the property "in the form of removal and replacement of wall board (*i.e.*, sheet rock) in the residence and then repainted same" without disclosure to Buyer. Buyer contended this "newly discovered" evidence supported his concealment theory. Sellers opposed the motion, arguing the testimony was irrelevant given the express SPDS disclosures.

¶25     On August 11, the superior court granted summary judgment in favor of Sellers and denied Buyer's motion to supplement. The court found Buyer had not provided any competent, admissible evidence to create a genuine issue of material fact that Sellers knew about the alleged defects at sale and misrepresented or concealed them from Buyer. The court likewise dismissed Buyer's mutual mistake claim because he

understood he had imperfect information. The court denied Buyer's motion to supplement, however, because the proffered "new" evidence did not create a fact issue.

¶26 The court denied the joinder motions of the ReMax and Realty One Defendants, emphasizing its summary judgment ruling related only to Sellers' alleged conduct. Those defendants thus moved for summary judgment in September 2017, which Buyer opposed. After oral argument on December 5, the court granted both summary judgment motions from the bench based on, among other things, the absence of expert testimony to establish a professional duty and breach of that duty. Buyer verbally asked for permission to supplement his briefing to include expert testimony he had disclosed but not included or argued, which the court denied.

¶27 Before a minute entry issued, Buyer filed a "Motion for Reconsideration of Ruling Denying Request to Supplement Summary Judgment Pleadings and Plaintiffs' Positions with Previously Disclosed Licensees (sic) Expert Opinions for Standard of Care Issue." The court requested and considered briefing on "(1) whether it would be an abuse of discretion for the Court to deny Plaintiff's request to supplement; and (2) whether allowing Plaintiff to supplement with the expert report would change the outcome of the Court's rulings on Defendants' Motions for Summary judgment and if not, why not." The court subsequently denied the motion for reconsideration and issued its written decision granting summary judgment to the remaining defendants. The superior court entered final judgment in favor of all defendants, and Buyer timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶28 We review the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 72, ¶ 11 (App. 2011). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We will affirm the disposition if it is correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996).

## A. Sellers' Motion for Summary Judgment

### 1. Misrepresentation, Fraud and Breach of Contract

¶29 Buyer's tort and breach of contract claims against Sellers hinge on his allegations that they misrepresented and concealed material

information about roof leaks and repairs. The superior court examined these claims under *Hill v. Jones*, 151 Ariz. 81 (App. 1986), which concerns the issue of disclosure in real estate transactions and creates a duty of disclosure for home sellers who "know[] of facts materially affecting the value of the property which are not readily observable and are not known to the buyer." 151 Ariz. at 85 (quotation omitted). The court granted summary judgment to Sellers because Buyer provided insufficient evidence to create a genuine issue of material fact that Sellers (1) misstated or concealed alleged defects, or (2) knew about the defects they allegedly misstated or concealed from Buyer. We agree.

¶30    Buyer asserts Sellers "did not completely or truthfully represent the actual condition of the property being sold." He points to three affirmative statements from the MLS listing and sales brochure: "lovingly maintained," "beautifully remodeled," and "newer A/C units and a roof." Buyer also cites statements in the SPDS and an email exchange to demonstrate Sellers "did not accurately disclose their property's roof condition, roof repairs and leaks."

¶31    The court held the "beautifully remodeled" and "lovingly maintained" statements represented mere sales puffery, which is not actionable as fraud or misrepresentation. We agree. A fraud claim cannot be premised on mere opinion. *Page Inv. Co. v. Staley*, 105 Ariz. 562, 564-65 (1970). The same is true for negligent misrepresentation. *See McAlister v. Citibank*, 171 Ariz. 207, 215 (App. 1992) ("Negligent misrepresentation requires a misrepresentation or omission of a *fact*."). The character of the statements as puffery or a representation of fact is a legal question. *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 827 (D. Ariz. 2016). These are not concrete representations of fact; they are inexact opinions of an adverb-laden sales pitch.

¶32    Buyer also points to the MLS description of a "newer" roof. At oral argument, Buyer's counsel argued the "reasonable definition" of "newer" in the real estate context means the roof was less than "five, six [or] seven years old." The superior court, however, found that "newer" is a relative adjective that derives its meaning from comparing two or more items; the term has no concrete meaning standing alone. We agree. As presented, "newer" has no concrete meaning—it might indicate the roof was installed in 1990 or just last month; or it might be an opinion of someone who thinks a 20-year-old roof is still "newer" or "newish." The

statement is not one of material fact unless tethered to another roof; for instance, the roof might be "newer" than the original roof.[2]

¶33        What is more, Buyer's assumed definition of "newer" as less than "five, six [or] seven years old" conflicts with Sellers' express disclosure in the SPDS that roof repairs had been conducted around 12 years earlier on the "sun side" portion of the roof.  At a minimum then, Buyer knew the "sun side" portion of the roof did not comport with his subjective definition of "newer."

¶34        And last, Buyer claims Sellers misrepresented the history and condition of the roof in their SPDS and an email from their real estate agent on March 22, 2013.  Buyer points to several misstatements or omissions, including:  (1) Sellers were "aware of" past roof leaks and they "were identified and corrected," (2) Sellers had "re-cover[ed]" the "older tile" on the sun-side of the roof in 2000, (3) Sellers had resealed the garage portion of the flat roof in December 2012; and (4) Sellers were "not aware" of "any interior wall/ceiling/door/window/floor problems," "any cracks or settling involving foundation, exterior walls or slabs," or "any past or present mold growth."

¶35        The superior court granted summary judgment on these claims because Buyer offered no evidence to establish a genuine fact issue to demonstrate causation or prove Sellers knowingly misstated or withheld the alleged material facts from Buyer.  We agree Buyer did not establish a genuine issue of material fact on the element of knowledge—that is, he offered insufficient evidence to show Sellers knew of the material facts they are accused of misrepresenting or concealing.

¶36        Buyer relied on two pieces of evidence to demonstrate Sellers' knowledge: a denial of coverage letter from Allstate Insurance and the George Frank expert report.  We examine each in turn.  The Allstate letter, dated February 11, 2014, is addressed to Buyer and responds to his request for coverage of "soffit damage due to rot from repeated leakage."  Allstate denied coverage based on various exclusions in Buyer's insurance policy.

_____

[2]        Buyer makes this point with the evidence he proffers to demonstrate the roof was not "newer," which is a denial of coverage letter from Allstate to Buyer in February 2014 noting the roof had been damaged by leaks "over a period of weeks, months or years."  As the superior court recognized, this evidence does not demonstrate falsity because the roof might still be "newer" even assuming historical leaks from the previous week or the prior year.

Buyer emphasizes the second to last paragraph, which states "[t]his letter only applies to the soffit portion of your roof where the damage was caused by repeated leakage or seapage [sic] from your roof which occurred over a period of weeks, months, or years." This letter does not create a genuine issue of material fact as to Sellers' knowledge. It never even mentions Sellers, much less indicates what they knew and when they knew it. Nor is knowledge proven by an unattributed and indeterminate finding of historical roof leaks. Indeed, Sellers disclosed the existence of past roof leaks in the SPDS and negotiated a credit for Buyer "to repair gap above the flat roof flashing in number of areas." The court correctly concluded the Allstate Letter "has no probative value."

¶37 Buyer fares no better with the expert report of George Frank, whom Buyer disclosed as an expert to "discuss and evaluate construction problems" with the home and calculate the cost of repair, if any. The court observed that Frank's report offers unhelpful, general opinions and "is laden with statements that constitute improper expert opinion testimony." Most significant, however, the report provides no evidence or testimony to establish that Sellers *knew* about and misstated or concealed the alleged extent of roof and house problems, and Frank instead resorts to mere speculation: "[T]he previous owner and the [ReMax Defendants] *had to* be aware of many of these defects present in the home before the sale to [Buyer]." His speculation is not enough to survive summary judgment.[3]

¶38 Buyer claims that summary judgment was inappropriate under *Hill v. Jones*, where this court held that house sellers have a duty to disclose termite damage "known to the seller, but not to the buyer, which materially affects the value of the property." 151 Ariz. at 83-84. But *Hill* is more harmful to Buyer's case than helpful because it amplifies the evidentiary shortcoming in this record that necessitated summary judgment. Unlike here, the record in *Hill* was teeming with evidence showing those sellers *knew* about the material defects misrepresented to or concealed from the buyers—for instance, those sellers had two visits from an exterminator to treat the house for termites, had a termite guarantee and regular termite inspections, had seen termite damage on the back fence, and a neighbor had shown the sellers "the area where the [termite] damage and treatment had occurred." *Id.* at 82-83. Buyer offered no such evidence here, instead arguing the Sellers simply must have known about the water damage because they had lived in the house for so long. But mere

---

[3] We also note the inconsistency between Frank's speculation and the allegations that Buyer himself only learned about the hidden defects after living in the house for a year and tearing down the walls.

speculation is unlike the hard evidence that created a factual question in *Hill*.

¶39 Buyer also argues the superior court refused to consider two documents in its summary judgment analysis, but the argument misconstrues the court's decision. Buyer points to a paragraph from the decision where the court "notes that the representations in the SPDS and March 22 Email do not by themselves constitute misrepresentations or concealment. They are simply representations." The court did not ignore these documents, but instead recognized their limited evidentiary value—that is, the documents contain representations that might form the basis of a misrepresentation claim, but Buyer must still prove the representations are false. Nor do the documents represent proof that Sellers knew about the alleged defects they purportedly misrepresented or concealed. We affirm the grant of summary judgment in Sellers' favor.

### 2. Mutual Mistake

¶40 The superior court concluded no reasonable jury could find by clear and convincing evidence that mutual mistake justifies rescission of the purchase contract. We agree.

¶41 To rescind the contract based on mutual mistake, Buyer "must show by clear and convincing evidence that the agreement should be set aside," which requires that the mutual mistake cover "a basic assumption on which both parties made the contract," and "have had such a material effect on the agreed exchange of performances as to upset the very bases of the contract." *Nelson v. Rice*, 198 Ariz. 563, 566, ¶ 7 (App. 2000) (quotation omitted). Buyer has no claim for mutual mistake if he was "aware, at the time the contract [was] made, that he ha[d] only limited knowledge with respect to the facts to which the mistake relate[d] but treat[ed] his limited knowledge as sufficient." *Id.* at 566, ¶¶ 7-8 (quotation omitted).

¶42 The court found that Buyer "knew that he had limited knowledge about the roof leaks and the drainage on the property," but "did not hire a roofer to take a closer look even after the inspector noted the stains on the garage ceiling." We agree. The undisputed facts indicate that Buyer had notice of roof-related issues from the Sellers and his home inspector, and he was repeatedly advised that he was responsible for conducting due diligence and warned to verify material information (in his counteroffer, the Buyer Advisory, the SPDS and BINSR). He was instructed to hire a professional roofer, to verify the roof's condition and to further

explore roof-related issues. He acknowledged the warnings and verified that he completed all desired inspections. Yet Buyer did not hire a roofer to take a closer look and instead opted to complete the transaction with limited knowledge. We find no error in dismissing Buyer's mutual mistake theory on this record.

## B.    Motion to Supplement Summary Judgment Response

¶43         Buyer next asserts the superior court abused its discretion in denying his motion to supplement his response to Sellers' motion for summary judgment with deposition testimony elicited *after* the motion was fully briefed and argued, but still under advisement.

¶44         Buyer filed his summary judgment response on March 17 and participated in oral argument on April 21. Two months after his response and one month after oral argument, Buyer deposed Frank and Ana Weiler. A week after the depositions, Buyer moved for permission to supplement his response based on new evidence. The claimed new evidence was deposition testimony from Sellers that they hired "a licensed contractor, who was a prior son-in-law, to perform construction work on the [house] in the form of removal and replacement of wall board (*i.e.*, sheet rock) in the residence and then repainted the same," and never told Buyer about the hire. Buyer argued the testimony had "a direct impact on this litigation," presumably as evidence of a cover-up. The court disagreed that the testimony went "directly to [Buyer's] claims" and denied the motion because "[Sellers] disclosed roof leaks that were identified and corrected," and the new evidence was simply "part of the repair process and not evidence of a misrepresentation."

¶45         We review the court's ruling for a clear abuse of discretion. *Schwab v. Ames Constr.*, 207 Ariz. 56, 60, ¶ 17 (App. 2004); Ariz. R. Civ. P. 7.1(a)(3)-(4) (responsive memoranda "must" be filed within 10 days after service of the motion, and "[a]ffidavits and other evidence submitted in support of any . . . memorandum *must* be filed with the . . . memorandum, unless the court orders otherwise") (emphasis added). Buyer articulated no good cause for waiting to depose the Sellers in his lawsuit until two months *after* filing his opposition to Sellers' motion for summary judgment. *Cf. Zimmerman v. Shakman*, 204 Ariz. 231, 236, ¶ 16 (App. 2003) (court may bar the use of supplemental disclosure if dispositive motion is pending but it also may allow late disclosure if good cause is shown). With minimal diligence, Buyer could have conducted the depositions before summary judgment had been briefed and argued, but he did not. On this record, the

court's decision was not "manifestly unreasonable." *Tilley v. Delci*, 220 Ariz. 233, 238, ¶ 16 (App. 2009).

**¶46** Moreover, the "newly discovered" evidence was consistent with the record and would not have rescued Buyer's claims from summary judgment. Even if the deposition testimony had been considered, the record contained insufficient evidence to show that Sellers had knowledge of roof-related defects which they had not tried to identify and correct, but instead had concealed from Buyer. *See Hill*, 151 Ariz. at 85. The testimony echoed the record and SPDS disclosures—confirming that roof leaks existed, and that Sellers had hired someone to identify and repair the damage. Sellers disclosed historical roof leaks and repairs and noted the leaks "were identified and corrected." We cannot conclude the court abused its discretion by denying Buyer's motion to supplement.

## C. Motions for Summary Judgment of ReMax and Realty One Defendants

**¶47** After hearing oral argument, the superior court granted summary judgment against Buyer on his professional negligence and breach of fiduciary duty claims because, among other things, Buyer provided no expert testimony to establish the professional standard of care and breach.[4] The court recognized that expert testimony was indispensable for Buyer to withstand summary judgment on his claims for professional negligence and breach of fiduciary duty—both to *establish* the professional standard of care for licensed real estate agents and agencies, and to demonstrate that defendants *breached* the standard. *Powder Horn Nursery, Inc. v. Soil & Plant Lab., Inc.*, 119 Ariz. 78, 80, 83 (App. 1978) (affirming summary judgment in defendant's favor because plaintiff provided no expert testimony that established the requisite standard of care owed by a professional plant laboratory to its customers and departure therefrom).

---

[4] The court also granted summary judgment on the fraud claims "based on lack of causation and its previous ruling that [Buyer] failed to allege sufficient facts to create a genuine issue of material fact as to his claims for fraud and negligent misrepresentation against [Sellers], and failed to present any additional facts that would create a genuine issue of material fact regarding the commission of fraud by [the ReMax and Realty One Defendants]."

¶48            Expert testimony was imperative because jurors are not equipped to designate a definitive standard of care for licensed real estate professionals and agencies, determine whether the standard has been satisfied or breached, and then apportion fault between and among several different professionals.[5] *Kreisman v. Thomas*, 12 Ariz. App. 215, 221 (1970) ("In the absence of evidence establishing the requisite standard of care and that defendant's conduct failed to meet that standard, there was no basis upon which the jury could have found defendant liable to the plaintiff, and therefore the trial court did not commit error in refusing to submit the matter to the jury."). Without expert testimony, the professional standard was indistinct and uncertain, leaving no genuine issue of material fact as to the elements of duty and breach. *Id.* ("Where, as here, the duty which the law recognizes arises because the defendant has held himself out to be trained in a particular trade or profession, the standard required for the protection of customers against unreasonable risks must be established by specific evidence. It cannot be left to conjecture nor be established by argument of counsel.").

¶49            Buyer argues the superior court should not have granted summary judgment for three reasons. First, he claims that no expert testimony was required because the standard of care was obvious and the alleged misconduct was grossly apparent. *Riedisser v. Nelson*, 111 Ariz. 542, 544 (1975) (expert testimony is required in professional negligence cases "unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it"). We disagree. An expert opinion was especially critical here, where Buyer sued seven different real estate professionals and agencies representing different parties with different interests and different relationships; Buyer has contracts with some and no contracts with others; and he signed various documents, guides and disclosures during the transaction which implicate and address the duties and responsibilities of distinct parties.

¶50            Nor did Buyer point to grossly apparent misconduct that all laypersons could identify. Buyer alleges the real estate professionals breached assorted duties and standards—ranging *from* alleged duties to detect all material defects a "professional person" could discover *to* purported duties to confirm that all transmitted information is accurate. These claims are novel and tenuous, not obvious and grossly apparent. The defendants held themselves out as having particular skills and training, and

---

[5]            Liability among shared tortfeasors is several only, not joint, except in limited circumstances that do not apply here. *See* A.R.S. § 12-2506.

expert testimony was needed to establish the standard of care by which to measure their actions.

¶51        Buyer himself debunked this argument at the outset of this lawsuit when his counsel certified that he needed expert testimony to succeed on his claims under A.R.S. § 12-2602, and again when he conceded at oral argument on summary judgment that he would need to elicit expert testimony at trial.  His initial, reflexive concession only amplifies the gaping evidentiary chasm.

¶52        Second, Buyer argues at minimum the superior court erred in denying his motion to supplement or reconsider and we should therefore reverse the summary judgment order.[6]  After the superior court announced its summary judgment decision in open court, Buyer orally sought permission to supplement his opposition with an expert declaration he had previously disclosed but never used to oppose summary judgment.  The court denied his motion, and he filed a written motion to reconsider.  The court invited and considered briefing on the issue, then denied the motion.  We review the denial for an abuse of discretion.  *Tilley*, 220 Ariz. at 238, ¶ 16.

¶53        The court did not abuse its discretion.  Buyer again insists he should have received a do-over.  He emphasizes he disclosed an expert witness and declaration regarding standard of care issues in discovery and insists the court should have reconsidered its summary judgment decision as if he had presented the expert declaration in opposition to summary judgment.  But he didn't.  Buyer had a reasonable opportunity to prepare and present his case and craft the summary judgment opposition of his choice, yet he made no mention of expert testimony to establish the standard of care in this professional negligence action.  *Cf. Hunter Contracting Co. v. Superior Court*, 190 Ariz. 318, 322 (App. 1997) ("[T]he major objective of Rule 56(f) is to insure [sic] that a diligent party is given a reasonable opportunity to prepare his case.") (quotation omitted); *Jones v. MEA, Inc.*, 160 So. 3d 241, 248 (Miss. App. 2015) ("While they cited multiple civil-procedure rules in their post-judgment motion, we have no rule that

---

[6]        We generally do not consider evidence and argument first presented in a motion for reconsideration.  *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15 (App. 2006).  One reason for this rule is that "when a new argument is raised for the first time in a motion for reconsideration, the prevailing party below is routinely deprived of the opportunity to fairly respond."  *Id.*  We nevertheless exercise our discretion and address Buyer's arguments here.

allows for what the Joneses are asking—to make a second, better attempt at trying a claim *after* that claim has been properly dismissed on summary judgment.").

**¶54**        Buyer might have decided to omit Hall's expert affidavit from his summary judgment opposition for assorted tactical reasons; he might have deemed it unpersuasive or believed it compromised his other arguments. What matters, however, is that Buyer concluded it was unnecessary to include or even reference Hall's affidavit in opposing the summary judgment motion or controverting the statements of fact.

**¶55**        As before, Buyer waited until after the parties exhaustively briefed and argued summary judgment and after the court orally granted the motion before requesting a do-over. He does not claim the evidence represents new facts or circumstances that came to light after summary judgment was decided. *Cf. Union Rock & Materials Corp. v. Scottsdale Conference Ctr.*, 139 Ariz. 268, 273 (App. 1983) (new matters in motion for reconsideration may be considered by another trial court when new facts or circumstances come to light between the granting of the motion for summary judgment and the motion for reconsideration). He provided no good reason for omitting the expert affidavit and neglecting the first element of his professional negligence claims. His counsel instead claims the issue was not raised or contested at summary judgment, which is false. Buyer had nearly three years to formulate his summary judgment defense and arguments. The court was not "manifestly unreasonable" in refusing Buyer's request to resurrect his professional negligence claims and reconsider the question of summary judgment based on backfilled evidence and argument. *Tilley*, 220 Ariz. at 238, ¶ 16.[7]

**¶56**        Buyer's third argument misconstrues the superior court's decision. He claims the court improperly dismissed his lawsuit because he never filed his real estate expert's declaration under A.R.S. § 12-2602, without ever "set[ting] a date and terms for compliance" under § 12-2602(E). *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 129, ¶ 19 (App. 2008) (court abused its discretion when it did not comply with § 12-2602(E) before dismissing claim under § 12-2602(F)). But his claim was not dismissed for failure to comply with A.R.S. § 12-2602. Buyer lost because he provided no evidence to prove an indispensable element of his claim (duty and breach), and a reasonable jury, therefore, could not find in his favor based on the record. He presented no expert testimony to establish

---

[7]        Because we affirm on this basis, we need not consider the alternative grounds for denying leave to allow supplemental briefing, *e.g.*, futility.

17

the ReMax and Realty One Defendants owed a duty and breached that duty—indispensable elements of his claims. *See Baird v. Pace*, 156 Ariz. 418, 420 (App. 1987) (expert testimony generally needed to establish duty and breach in professional cases).

¶57 In sum, we affirm summary judgment in favor of the ReMax and Realty One Defendants because Buyer did not establish a genuine issue of material fact on the professional standard of care or whether the defendants breached the undefined standard.

## D. Attorney's Fees and Costs

¶58 Sellers and the ReMax Defendants request their attorney's fees and costs pursuant to A.R.S. § 12-341.01(A). Because Sellers and the ReMax Defendants are prevailing parties, and the claims against them arose out of contract, we grant their request for attorney's fees on appeal under A.R.S. § 12-341.01(A), and their costs, subject to compliance with ARCAP 21.

## CONCLUSION

¶59 We affirm the superior court's orders granting summary judgment to all defendants.



AMY M. WOOD • Clerk of the Court
FILED: AA